172 N.J. Super. 468 (1979)
412 A.2d 1054
DR. MILTON ACKERMAN, PLAINTIFF,
v.
RITA LAGANO, ANGELO LAGANO, AND ROBERT BRADLEY BLACKMAN, ESQ., DEFENDANTS.
Superior Court of New Jersey, Law Division  Atlantic County.
Decided December 19, 1979.
*469 Mary J. Maudsley for plaintiff (Cooper, Perskie, Katzman, April, Niedelman and Wagenheim, attorneys).
Robert Bradley Blackman for defendants Laganos (Nichols and Blackman, attorneys).
William C. Carey for defendant Blackman; Rex K. Harriott on the brief (Lum, Biunno and Tompkins, attorneys).
*470 GIBSON, J.S.C.
The within matter represents a countersuit arising out of a pending medical malpractice claim. Plaintiff, a physician, asserts that he was wrongfully named as a defendant in the prior action and now sues plaintiffs in that action as well as their attorney. Several theories have been advanced in support of this cause, including negligence, wilful, wanton and gross negligence, malicious prosecution and malicious use of process. Defendant attorney has moved for summary judgment. Raised by this motion are several issues, certain of which do not appear to have been resolved by any reported decision in the State.
For purposes of the within motion, the material facts are not in dispute, R. 4:46 2, and they may be summarized as follows: Rita and Angelo Lagano, through their attorney, Robert Bradley Blackman, instituted an action in the Superior Court against the Atlantic City Medical Center, Dr. Milton Ackerman and others. In that action they allege that Mrs. Lagano underwent a needless hysterectomy because of the failure of defendants to use ordinary care in the conduct of pre-operative laboratory tests. Dr. Ackerman was the Director of Laboratories at the medical center at the time and was joined as an individual defendant. He subsequently moved for summary judgment concerning his individual liability. His motion, unopposed by the Laganos, was granted. The within suit was then instituted, the remainder of the malpractice action still pending.

Negligence
The initial question to be resolved is whether an attorney can be held civilly liable to one, other than his client, who claims to have been damaged as a result of the alleged negligence of that attorney in the conduct of his professional duties. Traditionally, this question has been answered in the negative based, among other things, on the lack of privity between the parties. See Annotation, "Attorneys-Liability to Third Parties," 45 A.L.R.3d 1181 (1972); 7 Am.Jur.2d, Attorneys at Law, § 167 *471 (1963). More recently, as the requirement for privity has been eased generally, the circumstances under which attorneys may be held liable to third parties has been broadened. Annotation, 45 A.L.R.3d, supra at 1184 1185. Although New Jersey is among those states which have recognized a broader base of liability, Stewart v. Sbarro, 142 N.J. Super. 581 (App.Div. 1976), the circumstances under which that liability may exist are still relatively narrow.
... It is true that generally an attorney is not liable to third persons for negligence in the performance of his professional duties.... But this rule is not all encompassing. Thus, where an attorney assumes a fiduciary obligation, it applies to persons who, though not strictly clients, he has or should have reason to believe rely on him. [Id. at 593; citation omitted]
In this case there is no suggestion of any fiduciary relationship between Dr. Ackerman and the movant. Nor is there any claim of reliance. Indeed, the very nature of the adversary process would preclude reliance by opposing parties. Bickel v. Mackie, 447 F. Supp. 1376, 1381 (N.D. Iowa, 1978). What is being suggested here is that defendants wrongfully brought the action and that their attorney negligently investigated the facts, thereby improperly joining Dr. Ackerman in his individual capacity. Actions for the wrongful institution of judicial proceedings, however, are cognizable in this State only in the form of a suit for malicious prosecution. As recently noted, this still remains the "sole theory of redress" for someone who has been injured by such an action. Devlin v. Greiner, 147 N.J. Super. 446, 469 (Law Div. 1977); see also, Norton v. Hines, 49 Cal. App.3d 917, 123 Cal. Rptr. 237 (Ct.App. 1975), where it was pointed out that a contrary rule would have the effect of denying the public free access to the courts.
... The attorney must have the same freedom in initiating his client's suit as the client. If he does not, lawsuits now justifiably commenced will be refused *472 by attorneys, and the client, in most cases, will be denied his day in court. [49 Cal. App.3d at 923, 123 Cal. Rptr. at 241].
For these reasons, therefore, plaintiff's complaint against the movant, to the extent that it alleges a cause of action based on negligence, must fail.

Gross Negligence
As previously indicated, plaintiff's complaint asserts not only negligence but also wilful and wanton and gross negligence. However, it does not make any difference whether the allegations of wrongdoing are couched in terms of simple negligence or gross negligence. Both theories assume the existence of a duty between an attorney and third persons which simply does not exist in this setting. See, generally, Annotation, 45 A.L.R.3d, supra; Devlin v. Greiner, supra. This is not to say that attorneys can show a complete disregard for the rights of a prospective defendant since, as will be seen from the discussion which follows, malicious prosecution remains as an available remedy.

Malicious Prosecution and Malicious Use of Process
As noted, the complaint here includes allegations of malicious prosecution. Given the limited extent to which attorneys may be liable to persons other than their clients, however, one may question whether such an action will lie. Annotation, 45 A.L.R.3d, supra. Research has not revealed any New Jersey cases which have articulated the issue within this context, but that is not to say that the court is without guidance. In Earl v. Winne, 14 N.J. 119 (1953), for example, the Supreme Court reversed a trial court dismissal of an action for malicious prosecution against the prosecutor in a criminal libel case. It was noted there that although there was a presumption that the prosecutor acted lawfully in the discharge of his public duty, where that presumption is overcome, he could be held civilly *473 liable. Id. at 134. A similar right was recognized in the civil setting in Voytko v. Ramada Inn of Atlantic City, 445 F. Supp. 315 (D.N.J. 1978), where the court purported to apply New Jersey law. Cf. Schalk v. Kingsley, 42 N.J.L. 32, 33 (Sup.Ct. 1880). One of the few cases which fully articulates this issue is an out-of-state decision. Norton v. Hines, 49 Cal. App.3d 917, 222, 123 Cal. Rptr. 237, 240 (Ct.App. 1975). The conclusion there was clear that such an action would lie. Consistent with the above authorities, it is the view of this court that no reasonable basis exists which would immunize attorneys from civil liability where it can be shown that their malicious use of the judicial process has injured third persons. See, generally, Annotation, "Attorneys  Malicious Prosecution," 27 A.L.R.3d 1113 (1969).
To determine whether malicious prosecution has been established here requires a closer examination of the elements required in such an action. It should be pointed out initially that the within complaint alleges not only malicious prosecution but also malicious use of process. Within the civil context, however, these terms are used interchangeably and the proof requirements are identical. Prosser, Torts (4 ed. 1971), § 120 at 853. In either case, the moving party is entitled to recovery only where it can be shown that (1) the initial suit was brought without reasonable or probable cause; (2) it was actuated by malice; (3) it was terminated favorably to the plaintiff, and (4) that the counterclaimant suffered a "special grievance." Mayflower Industries v. Thor Corp., 15 N.J. Super. 139, 152 (Ch.Div. 1951), aff'd 9 N.J. 605, 89 A.2d 242 (1952). In determining whether these elements have been shown here, it must be remembered that there has yet to be any final disposition of the underlying medical malpractice case, although as indicated, Dr. Ackerman's individual liability has been resolved in his favor. Sharp disagreement remains as to whether the wrongful naming of Dr. Ackerman by Lagano's attorney was without probable cause or actuated by malice. Neither issue need be resolved, *474 however, in view of what this court views as a failure of plaintiff to establish damages which constitute "special grievance."
There is a division of opinion in this country concerning the requirement that a successful litigant in a malicious prosecution action show special injury. 52 Am.Jur.2d § 10 (1970). Nevertheless, this rule has long been the law of this State. Potts v. Imlay, 4 N.J.L. 377, 382, 386 (Sup.Ct. 1816). In examining the justification for this requirement, one must keep in mind the context within which such claims are viewed. Malicious prosecution is not a favored cause of action. Penwag Property Co., Inc. v. Landau, 76 N.J. 595 (1978). Underlying that view is the strong policy that the public should be uninhibited in seeking redress in the courts. As recently reiterated by our Supreme Court,
... the law does not look with favor upon actions for malicious prosecution; it does not encourage them. The reason is embedded deeply in our jurisprudence. The courts must be freely accessible to the people. Extreme care must be exercised so as to avoid the creation of a reluctance on their part to seek redress for civil or criminal wrongs for fear of being subjected to a damage suit if the action results adversely. [Mayflower Industries v. Thor Corp., 15 N.J. Super. 139, 153 (Ch.Div. 1951), aff'd 9 N.J. 605 (1952)]. [Penwag Property Co., Inc. v. Landau, supra at 598]
Although recognizing the countervailing policy that groundless claims motivated by malice should entitle one to maintain an action for damages, the court concluded that "on balance" the rule requiring the showing of "special grievance" should be maintained. Ibid.[1]
To satisfy the requirement for proof of "special grievance," plaintiff must show some interference with his personal *475 liberty or freedom or damage different from and in addition to the ordinary litigation expenses which have been incurred in defense of the primary action. Fielder Agency v. Eldan Constr. Corp., 152 N.J. Super. 344, 349 (Law Div. 1977). Examples of such interference are the appointment of a receiver, filing of a petition in bankruptcy, granting of an injunction, issuance of a writ of attachment or writ of replevin, filing of a lis pendens, issuance of an order of arrest, or wrongful interference with possession or enjoyment of property. Id. at 350. The damages claimed here consist of litigation expenses, interference with the doctor's practice and peace of mind and damage to his professional reputation. Leaving aside for the moment the question of plaintiff's claimed damage to his professional reputation, the remainder of the elements mentioned are clearly of the type which would potentially exist in any lawsuit and thus cannot be said to be different from and in addition to the ordinary litigation expenses.[2]Fielder Agency v. Eldan Constr. Corp., supra.
The question of whether damage to one's professional reputation constitutes "special injury" has not been resolved by any reported decision in this State. However, see generally, Annotation, "Medical Malpractice Countersuits," 84 A.L.R.3d 555 (1978). A similar question has been raised within the context of a counterclaim for malicious prosecution where the counterclaimant asserted damage to his reputation for financial responsibility. Fielder Agency v. Eldan Constr. Corp., supra. There, a real estate broker had unsuccessfully sued a seller for commissions. In considering the seller's counterclaim, the court ruled that the damages alleged were ones which were likely to result from any action in which an asserted monetary obligation is sought to be enforced. Accordingly, the claimed damage to the seller's reputation did not qualify as "special injury" and *476 was ruled to be a loss which must be accepted as an uncompensated burden of litigation. Id. at 351. As noted by the court, a "special injury" is one arising out of the action which would not ordinarily result in similar cases seeking recovery for breach of a real estate listing agreement. Ibid.
Applying the above reasoning to the case at bar, plaintiff's claimed damage to his professional reputation would not constitute a "special injury" since such damage is potentially present in every malpractice claim. One may nevertheless question whether a professional reputation should be treated differently. That is, is there a property right here that is entitled to be classified as "special" such that injury to it would justify recourse to victims of what are otherwise found to be maliciously prosecuted law suits? Those jurisdictions which have squarely faced this issue have ruled in the negative. Annotation, 84 A.L.R.3d, supra.
The conflicting policy considerations raised by this question were well expressed in a recent federal court decision, Bickel v. Mackie, supra.
In a society in which litigation has become a national pastime it may seem obvious that there should be a remedy for the victim of frivolous litigation where that defendant was neither seized, had his property seized or sustained special injuries. See 52 Am.Jur.2d, Malicious Prosecution § 11. This is particularly so when the original litigation cast aspersions on a defendant's professional reputation. See Von Brimer v. Whirlpool Corp., 536 F.2d 838, 847 (9th Cir.1976). [447 F. Supp. at 1380]
The court nevertheless concluded that under Iowa law, reputational harm was not recognized as a basis for a malicious prosecution action. In so holding, it emphasized the strong policy in favor of having our courts open to all who feel they have a just cause of action. Id. at 1379. Reference was also made to the availability of the legislative process in resolving the competing interests at stake. Id. at 1381.
Identical results were reached in the following cases: O'Toole v. Franklin, 279 Or. 513, 569 P.2d 561 (1977); Drago v. Buonagurio, *477 89 Misc.2d 171, 391 N.Y.S.2d 61 (Sup.Ct. 1977), and Pantone v. Demos, 59 Ill. App.3d 328, 16 Ill.Dec. 607, 375 N.E.2d 480 (App.Ct. 1978).[3] The Pantone case is particularly informative, having dealt with all of the issues raised by the case at bar. As was held here, negligence and gross negligence were rejected as viable claims within this setting. The court went on to examine the question of whether damage to professional reputations constituted a "special injury." It held that the rule was clear that the type of injury needed was one "`not necessarily resulting in any and all suits prosecuted to recover for like causes of action.'" 16 Ill.Dec. at 613, 375 N.E.2d at 486.
... In this case the allegations of damage to plaintiff's professional reputation are certainly not of such a unique character. Damage to reputation, be it professional or personal, is unfortunately a consequence of most litigation. It does not constitute a special loss over and above the ordinary expense and trouble attendant upon the defense of any civil suit. [Ibid.; citation omitted]
Again, the court emphasized the overriding public policy of free and unfettered access to the courts as justification for the strict requirements of proof in malicious prosecution cases. It was also noted that these considerations apply with equal force not only to the plaintiffs in the original suit, but to their counsel as well.[4]Id. at 16 Ill.Dec. at 611, 375 N.E.2d 484.
Given the continuing requirement for "special injury" as an element of proof in malicious prosecution cases, this court finds the reasoning of the above cases to be persuasive. It is the *478 conclusion of this court, therefore, that plaintiff's claimed damage to his professional reputation does not constitute "special injury." Having already rejected plaintiff's allegations of negligence, wilful and wanton and gross negligence, the countersuit against this defendant must fail as a matter of law. Defendant's motion for summary judgment is hereby granted.
NOTES
[1] The requirement for "special grievance," although considered to be the minority view, appears to be followed in 16 jurisdictions other than New Jersey. See O'Toole v. Franklin, 279 Or. 513, 569 P.2d 561 (Sup.Ct. 1977), where Justice Linde outlined those states which follow the rule as well as those which do not.
[2] There was no suggestion here that the "interference with the doctor's practice" was anything other than that resulting from the time taken to defend the within action.
[3] It is significant to note that although these cases involve jurisdictions which require a showing of "special grievance" actions; even in those states which do not, countersuits for malicious prosecution have rarely been successful. Annotation, 84 A.L.R.3d, supra.
[4] The above case was cited with approval by Justice Pashman in his concurring opinion in Penwag Property Co., Inc. v. Landau, supra, 76 N.J. at 599.