263 N.J. Super. 472 (1993)
623 A.2d 272
LISA PETRILLO, PLAINTIFF-APPELLANT,
v.
WILLIAM G. BACHENBERG, JR., WILLIAM G. BACHENBERG, JR., TRUSTEE, "THE TRUST", A FICTITIOUS NAME, BACHENBERG & BACHENBERG, INC., BRUCE D. HERRIGEL, TRUSTEE AND JOHN A. MATTHEWS, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued January 26, 1993.
Decided April 13, 1993.
*474 Before Judges MICHELS, BAIME and WALLACE.
Bertram J. Latzer argued the cause for appellant.
Robert A. Ballard, Jr. argued the cause for respondents William G. Bachenberg, Jr., William G. Bachenberg, Jr., Trustee, "The Trust" and Bachenberg & Bachenberg, Inc.
Robert DeChellis argued the cause for respondent Bruce D. Herrigel (George F. Mullen, on the brief).
*475 Walter R. Davis, Jr. argued the cause for respondent John A. Matthews.
The opinion of the court was delivered by MICHELS, P.J.A.D.
Plaintiff Lisa Petrillo appeals (1) from a judgment of the Law Division entered on a jury verdict awarding defendants William G. Bachenberg, Jr., William G. Bachenberg, Jr., Trustee and "The Trust" (hereinafter collectively referred to as Bachenberg) damages in the sum of $16,000 plus prejudgment interest and (2) from an order denying her motion for a new trial in this action to recover the return of a real estate deposit.
In 1987, the Rohrer Construction Company (Rohrer) entered into a contract to sell a parcel of land in Union Township, Hunterdon County, New Jersey. The property was located near Route 78 and was in close proximity to the headquarters of Foster Wheeler, a major employer in northern Hunterdon County. Rohrer, in contemplation of the sale, ordered percolation tests in accordance with the contract. A percolation test "is intended to demonstrate the fact or lack of fact that a particular strata in the soil is permeable so that it would hopefully support the design and installation of a septic system." The percolation tests were performed by Heritage Consulting Engineers (Heritage), which prepared two reports: one, in September 1987, indicating that one "acceptable" percolation test was obtained, and the other, in November 1987, indicating a second "acceptable" test. Heritage had begun many other additional tests, but discontinued most of them as soon as it observed that two test locations were likely to be successful. Only two passing tests were required in Union Township.
The sale for which the Heritage tests were performed was never consummated and Rohrer then listed the property for sale with defendant realtor Bachenberg & Bachenberg, Inc., of which defendant William A. Bachenberg, Jr. was a principal. Defendant Bruce Herrigel, Esq. had been the attorney for *476 Rohrer in connection with the 1987 contract for the sale of the Union Township property. When Rohrer listed the property for sale with Bachenberg, Herrigel sent Bachenberg a two-page report, purporting to be the results of the percolation tests conducted by Heritage. However, the two-page report consisted of one page from the September 1987 tests and one page from the November 1987 tests. It thus appeared that two passing tests were obtained out of seven attempts, instead of two passing tests out of thirty attempts.
In December 1988, Bachenberg and his partner, defendant John A. Matthews (Matthews), purchased the Union Township property at a sheriff's sale for $70,000. In February 1989, plaintiff contacted Bachenberg about purchasing the property for a day-care center. During negotiations, Bachenberg gave plaintiff the mismatched two-page Heritage report forwarded to him by Herrigel. Plaintiff offered the asking price of $160,000. On June 26, 1989, the parties executed a contract of sale for the property, and plaintiff paid Bachenberg a deposit of $16,000. Subsequent to the execution of the contract of sale, Bachenberg agreed to a request by plaintiff for an additional forty-five days from the date of the contract to satisfy herself that the soil was appropriate for a septic system for her intended use of the property and at an acceptable cost. This agreement was memorialized by Herrigel's letter to plaintiff's attorney Bertram J. Latzer, Esq., dated July 10, 1989, which read, in pertinent part, as follows:
We accept and approve your proposal to have the contingency period include a 45-day contingency to satisfy the buyer that the soil is appropriate for septic system for the intended use at an acceptable cost and that there is sufficient water for that use. The understanding will be that the contingency period shall not be extended and that that 45-day contingency period will run concurrently with the first 45-days of the contingency.
On the advice of her attorney, plaintiff chose not to rely on the 1987 Heritage percolation reports, and instead hired her own engineering firm, Canger and Cassera, to perform percolation tests. In turn, Canger and Cassera hired Gerald Perricone (Perricone), a consulting geotechnical engineer, to perform the *477 tests and to evaluate the feasibility of a septic system on the property. Perricone was unable to obtain a single passing percolation test. As a result, Perricone concluded that the property was "not suitable to support [an] on-site sewerage disposal system." When asked at trial to reconcile his results with the Heritage reports, Perricone testified that the two passing tests obtained by Heritage were anomalies, reflecting conditions in "one small area," and were not based on a representative soil profile. In August 1989, Perricone submitted his report to plaintiff.
On August 22, 1989, based on the Perricone report, plaintiff's counsel wrote to Herrigel advising that plaintiff considered the contract of sale to be "null and void". At trial, plaintiff explained her reason for voiding the transaction as follows:
Well, because for my use it's extremely important that the perc tests be good and that I could put a suitable septic system on the land for my use, and it was crucial, so there was no way that I could go on with this according to what my engineers told me.
Plaintiff further testified that the mismatched two-page Heritage report had been a significant inducement to her entering into the contract of sale. However, she had decided to obtain her own tests "due to the importance of having a septic system that worked well" in view of the fact that she proposed to use the property for a day-care center.
In an apparent attempt to satisfy plaintiff's concerns and to salvage the transaction, Bachenberg hired Heritage to design a septic plan that would be suitable for plaintiff's proposed use of the property. Bachenberg obtained the county's approval for the design. Throughout the fall of 1989, while rejecting the new design, plaintiff proposed that Bachenberg allow her to perform additional percolation tests at the places where the 1987 tests had been successful. Bachenberg refused plaintiff's overtures.
In February 1990, after Bachenberg refused to return her $16,000 deposit, plaintiff instituted this action against Bachenberg in his individual, corporate and trustee capacities and *478 against Herrigel in his capacity as trustee of the deposit monies paid to Bachenberg. Plaintiff charged the Bachenberg defendants generally with breach of contract in failing to return the $16,000 deposit, concealment, fraud and conspiracy. She charged Herrigel with breach of contract and breach of his fiduciary duties as an attorney. Subsequently, plaintiff amended her complaint to charge Bachenberg with violating New Jersey's Consumer Fraud Act by concealing the fact that the property had previously failed numerous percolation tests thereby rendering the property unsuitable for its intended use. Plaintiff filed a second amended complaint to name Matthews as a defendant and to charge Herrigel additionally with concealment of information concerning the percolation tests. All defendants denied responsibility to plaintiff and Bachenberg counterclaimed seeking to retain the $16,000 deposit on the ground that plaintiff breached the contract of sale.
The trial court dismissed all claims against Herrigel and the concealment claims against Bachenberg during trial. At the conclusion of all the evidence, the jury in answer to special interrogatories, found that: (1) plaintiff had a right to terminate the contract as a result of the testing performed by her experts; (2) plaintiff acted in good faith in relying upon her expert's opinion that the soil was not suitable for a septic system, but that she did not terminate the contract; (3) plaintiff breached the contract by failing to act in good faith in obtaining all necessary tests and approvals, and (4) Bachenberg was entitled to keep the $16,000 deposit. The jury also found that Bachenberg did not misrepresent important and significant facts by giving plaintiff the mismatched two-page Heritage percolation report or conceal important and significant facts knowingly with the intent that plaintiff rely on them. The trial court, therefore, molded the verdict and entered judgment in favor of Bachenberg against plaintiff in the sum of $16,000 with interest. Plaintiff's motion for a new trial was denied and this appeal followed.
Plaintiff seeks a reversal of the judgment and the order denying her motion for a new trial, and requests the entry of *479 judgment in her favor on the breach of contract claim. She also seeks a reversal and a remand for a new trial on all other issues. She contends essentially that: (1) the cancellation of the contract was based on the uncontradicted factual findings of her expert that the soil would not support a septic system for a day care center and, therefore, judgment should have been entered in her favor at the close of the evidence; (2) neither her request for additional testing, which was rejected by Bachenberg, nor her refusal to accept Bachenberg's septic design constituted a waiver of her right to void the contract and the trial court's charge concerning waiver was erroneous; (3) the trial court's dismissal of the common law fraud count was erroneous; (4) the trial court erred in dismissing her claim against Herrigel at the conclusion of her proofs; (5) the trial court's refusal to charge the jury as to Bachenberg's negligence constituted reversible error; (6) the trial court erred in admitting into evidence the Hunterdon County Health Department's approval of Herrigel's septic system design as an exception to the hearsay rule; (7) the jury's finding on special interrogatories that she had the right to unilaterally terminate the contract and that she acted properly in relying upon her expert's report required the entry of judgment in her favor; (8) the jury's verdict was tainted by the trial court's admission of evidence of the Hunterdon County Health Department's approval of the Heritage septic system design and the trial court's charge on waiver, thereby warranting a new trial on issues of common law and consumer fraud; and (9) the excised report showing seven rather than thirty tests was a misrepresentation of the percolation capacity of the soil and Bachenberg's intent to deceive her was irrelevant under the Consumer Fraud Act.

I.
We consider first plaintiff's claim that the trial court's jury charge on waiver was erroneous, requiring a reversal of the judgment and a remand for a new trial. It is fundamental that waiver involves the intentional relinquishment of a known *480 right and, thus, it must be shown that the party charged with the waiver knew of his or her legal rights and deliberately intended to relinquish them. Shebar v. Sanyo Business Sys. Corp., 111 N.J. 276, 291, 544 A.2d 377 (1988). Waiver must be evidenced by a clear, unequivocal and decisive act from which an intention to relinquish the right can be based. Country Chevrolet v. North Brunswick Planning Bd., 190 N.J. Super. 376, 380, 463 A.2d 960 (App.Div. 1983). Waiver implies an election by the party to dispense with something of value or to forego some advantage which that party might have demanded and insisted upon. Ibid. It must be supported by either an agreement with adequate consideration, or by such conduct as to estop the waiving party from denying the intent to waive. West Jersey Title and Guaranty Co. v. Industrial Trust Co., 27 N.J. 144, 152-53, 141 A.2d 782 (1958).
We are convinced from our study of the record that the trial court failed to properly and adequately instruct the jury on waiver. The jury charge concerning waiver was incomplete and did not provide the jury with the fundamental principles of waiver. First, the trial court invited the jury to find a waiver but did not define that term. "Waiver" is a legal term of art consisting of certain elements of which the jury was never informed. The jury was not told that plaintiff had to voluntarily, deliberately intend to give up her right to cancel the contract. The charge allowed the jury to find waiver if it concluded that plaintiff's conduct would cause an objective observer to believe that she was giving up her right to terminate the contract. Under the charge, the jury could find waiver without considering plaintiff's subjective intent.
Second, entirely apart from the trial court's failure to fully explain the elements of waiver, it also failed to instruct the jury on how to apply the governing principles to the facts of the case. In view of the proofs, it was by no means clear which of plaintiff's acts might be considered a waiver of her right to cancel the contract. Plaintiff unequivocally canceled the contract *481 on August 22, 1989. She then made a further proposal concerning the contract "without prejudice", but never expressly withdrew her August 22nd cancellation. The trial court should have instructed the jury to consider these facts as they might serve to negate any waiver. In sum, the charge concerning waiver had the clear capacity to mislead the jury and permit it to find a waiver without considering plaintiff's subjective intent. Consequently, the judgment must be reversed and the matter remanded for a new trial on plaintiff's contract claims.

II.
We are also satisfied that the trial court erred in dismissing plaintiff's claims against the Bachenberg defendants based on fraud. Based on the proofs, a jury might find that the Bachenberg defendants misrepresented the facts in giving plaintiff the mismatched two-page Heritage report, without informing her that the report was culled from two separate testing sessions. The report furnished plaintiff with misrepresentations that there had been two successful percolation tests out of seven attempts, when in reality there were two successful percolation tests out of thirty attempts. Had plaintiff known that there had been thirty tests rather than seven, she might not have expended the moneys for her own independent tests, because she might have surmised that such test results were not likely to be favorable.
Furthermore, the trial court overlooked the monetary damages caused by plaintiff's engineer's reliance on the mismatched two-page report. Eugene Buzzynski, who prepared the engineering plan for the proposed day-care center, testified that, based on the two-page report showing two successful percolation tests out of seven, he recommended that engineering work begin at once. He was of the opinion that further percolation tests would be performed later, due to (1) the age of the Heritage tests, and (2) the fact that his firm "would be responsible for the actual design of that system." Had he *482 known that the report submitted to plaintiff was compiled from two different reports, and that there had been many more failed tests, he testified that he would have recommended that the work not proceed until new percolation tests were done. Plaintiff thereby would have saved the $4,364.28 that Canger and Cassera charged her for the field survey, wetlands delineation, and preliminary design. In sum, based on the proofs of this case, plaintiff presented a jury question as to Bachenberg's fraud or concealment in failing to furnish the complete testing data and the trial court erred in dismissing plaintiff's claims in this regard.

III.
We are also satisfied that the trial court erred in granting Herrigel's motion for an involuntary dismissal at the conclusion of plaintiff's proofs. The trial court held that the existence of a duty on the part of Herrigel was a question of law which he resolved against plaintiff, reasoning, in part, as follows:
With regard to the factual aspect of this, there are no facts dealing with any responsibility or duty that Mr. Herrigel had. He had no knowledge of what Mr. Bachenberg gave, if anything, to Miss Petrillo, and on Miss Petrillo's cross examination she essentially said she never intended to rely on anything Mr. Herrigel provided or failed to provide and never hired Mr. Herrigel. Mr. Herrigel never gave direct information to her. Mr. Herrigel never refused to answer any questions put to him.
Taking the mechanical function that I must apply, I find that there is no evidence that I have before me dealing with any responsibility or any breach of any duty committed by Mr. Herrigel in this transaction.
Plaintiff raised this issue of Herrigel's liability again on the motion for a new trial, which the trial court summarily rejected.
Although plaintiff presented scant evidence of Herrigel's role in the transaction, Herrigel's counsel stipulated that Herrigel had possession of both Heritage reports since November 1987. Additionally, Bachenberg testified that in October 1988 Herrigel gave him the mismatched two-page report, not the full and complete reports which would have shown the thirty test results. *483 And, it is undisputed that by letter of September 21, 1989, Herrigel sent plaintiff's counsel a copy of one of the 1987 percolation reports and advised counsel that another 1987 test had been successful.
Plaintiff argues that based on this evidence and the reasonable inference to be drawn from it, a jury "could have found that Herrigel breached his duty of fairness" by not fully informing her, before she signed the contract of sale, of the two 1987 tests. Herrigel argues, however, that he had no duty to plaintiff to disclose the reports and that, even if he did, he did not breach that duty.
Plaintiff, for the first time on appeal, references two Rules of Professional Conduct: RPC 4.1 ("Truthfulness in Statements to Others") and RPC 8.4 ("Misconduct"). RPC 4.1 reads in part:
(a) In representing a client a lawyer shall not knowingly:
(1) make a false statement of material fact or law to a third person; or
(2) fail to disclose a material fact to a third person when disclosure is necessary to avoid assisting a criminal or fraudulent act by a client.
RPC 8.4(c) forbids "conduct involving dishonesty, fraud, deceit or misrepresentation."
We are satisfied that any claimed misconduct by Herrigel was far too ambiguous or speculative to rise to the level of wilful dishonesty contemplated by the foregoing Rules of Professional Conduct. Moreover, even plaintiff's counsel disclaimed any intention to accuse Herrigel of "fraud". In any event, an attorney's violation of an ethics rule does not in itself establish a cause of action in tort. Albright v. Burns, 206 N.J. Super. 625, 634, 503 A.2d 386 (App.Div. 1986).
However, there is authority for the proposition plaintiff now advances that an attorney owes a fiduciary duty to persons, though not strictly clients, who the attorney knows or should know would rely on the attorney in his or her professional capacity. The traditional rule, both in New Jersey and elsewhere, has been that only a client can assert a cause of action against the attorney for professional negligence or malpractice. This rule is grounded in the perceived need for privity of *484 contract between the attorney and the party seeking to recover for the attorney's breach of duty. See R.J. Longo Constr. Co. v. Schragger, 218 N.J. Super. 206, 208, 527 A.2d 480 (App.Div. 1987); Ackerman v. Lagano, 172 N.J. Super. 468, 470, 412 A.2d 1054 (Law Div. 1979). See generally Joan Teshima, Annotation, Attorney's Liability, To One Other Than Immediate Client, For Negligence In Connection With Legal Duties, 61 A.L.R.4th 615 (1988); Joan Teshima, Annotation, What Constitutes Negligence Sufficient To Render Attorney Liable To Person Other Than Immediate Client, 61 A.L.R.4th 464 (1988).
Our Supreme Court has not had occasion to consider the present viability of this rule, but it has long recognized that an attorney may owe a duty to a third-party under appropriate circumstances. In this regard, the Court has held that an attorney's fiduciary obligation extends to all persons, even those who are not clients, who he or she knows or should know are relying on his or her professional actions. In re Palmieri, 76 N.J. 51, 59, 385 A.2d 856 (1978); In re Hurd, 69 N.J. 316, 330, 354 A.2d 78 (1976); In re Genser, 15 N.J. 600, 606, 105 A.2d 829 (1954). Based in part on this principle, some courts have signaled a retreat from the privity requirement. See, e.g., R.J. Longo Constr. Co. v. Schragger, supra, 218 N.J. Super. at 208-09, 527 A.2d 480 (rule "may have outlived its usefulness"); Ackerman v. Lagano, supra, 172 N.J. Super. at 471, 412 A.2d 1054 ("as the requirement for privity has been eased generally, the circumstances under which attorneys may be held liable to third parties has been broadened").
Moreover, in Stewart v. Sbarro, 142 N.J. Super. 581, 586-87, 362 A.2d 581 (App.Div.), certif. denied, 72 N.J. 459, 371 A.2d 63 (1976), the sellers of stock in a corporation sued the buyers' attorney for failing to advise the sellers of his inability to obtain certain signatures, thereby causing the sellers to become unsecured creditors in a bankruptcy proceeding. The buyers had expressly agreed to obtain those signatures. We reversed the trial court's refusal to recognize that the attorney had a *485 duty to third-parties who were not clients of the attorney, stating:
It is true that generally an attorney is not liable to third persons for negligence in the performance of his professional duties. But this rule is not all encompassing. Thus, where an attorney assumes a fiduciary obligation, it applies to persons who, though not strictly clients, he has or should have reason to believe rely on him. We believe, moreover, that where, as here, an attorney undertakes a duty to one other than his client, he may be liable for damage caused by a breach of that duty to a person intended to be benefited by his performance. [Id. at 593, 362 A.2d 581 (citations omitted)].
In reaching this decision, we borrowed the balancing-of-factors test proposed by a California court, explaining:
The determination of whether the duty undertaken by an attorney extends to a third person not in privity "involves the balancing of various factors, among which are the extent to which the transaction was intended to affect the plaintiff, the foreseeability of harm to him, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, and the policy of preventing future harm." [Ibid. (quoting Donald v. Garry, 19 Cal. App.3d 769, 771-72, 97 Cal. Rptr. 191, 192 (Cal.Dist. Ct.App. 1971))].
In Albright v. Burns, supra, 206 N.J. Super. at 632-33, 503 A.2d 386, we applied the Stewart v. Sbarro approach in reversing the dismissal of a legal malpractice action by an estate against the attorney for the testator's nephew. Though the attorney did not formally represent the testator, the circumstances were such as to put the attorney on notice that he was to act to protect the testator's interests as well as his client's. Id. at 632, 503 A.2d 386. We added that "privity should not be required between the attorney and one harmed by his breach of duty where the attorney had reason to foresee the specific harm which occurred." Id. at 633, 503 A.2d 386.
Additionally, we drew further authority from the Rules of Professional Conduct, citing the rule requiring a lawyer to deal properly with property belonging to a third person (R.P.C. 1:15), and reasoned that:
While violations of ethical standards do not per se give rise to tortious claims, the standards set the minimum level of competency which must be displayed by all attorneys. Where an attorney fails to meet the minimum standard of *486 competence governing the profession, such failure can be considered evidence of malpractice. [Id. at 634, 503 A.2d 386 (citations omitted)].
Most recently, in R.J. Longo Constr. Co. v. Schragger, supra, 218 N.J. Super. at 207, 527 A.2d 480, the township attorneys prepared contract documents to be used in bidding for sewer construction and the winning bidder discovered that the attorneys had failed to obtain the easements required by the contract. The trial court dismissed the bidder's negligence action, given the absence of an attorney-client or a fiduciary relationship. Id. at 208, 527 A.2d 480. We reversed, noting the probable obsolescence of the privity prerequisite, but declined to "take that giant step of eliminating privity." Id. at 209, 527 A.2d 480. Instead, we found that the dismissal was "inappropriate under existing law," namely, the rule applied in Albright v. Burns, supra, 206 N.J. Super. at 632-33, 503 A.2d 386, that an attorney owes a fiduciary duty to third parties who reasonably rely on him.
The author of the 1988 A.L.R. Annotations, supra, reported that no cases had been found imposing liability on an attorney in favor of the opposing party in a real estate transaction. Teshima, supra, 61 A.L.R.4th at 476. Since then, however, there has been at least one such case. The deciding factor was whether the non-client reasonably relied on the attorney's actions. In Collins v. Binkley, 750 S.W.2d 737, 739 (Tenn. 1988), the Tennessee Supreme Court reasoned:
In the case at bar, it is undisputed that the attorney was employed by the seller to prepare the deeds and that no privity of contract existed between plaintiffs and the attorney. However, there was evidence that the attorney knew that plaintiffs would rely upon him and that it was his professional responsibility to prepare a valid warranty deed entitled to registration that would give notice to the world that plaintiffs were the owners of the described real property and that plaintiffs would suffer loss if the acknowledgment was defective. Further, there was evidence that the omission in the acknowledgment was below the standard of care required of an attorney preparing instruments for conveyance of real property. Those are the elements that give rise to the duty of an attorney to non-clients and may result in liability for the damages sustained by non-clients.
Given this court's past relaxation of the privity rule and the Supreme Court's analogous approach in Rosenblum v. Adler, *487 93 N.J. 324, 338-39, 461 A.2d 138 (1983), which extended protection in the accounting profession to those who may be harmed by the reasonably foreseeable consequences of an accountant's negligent act, we hold to the view that a buyer of real estate has a cause of action against an attorney for the seller who provides misleading information concerning the subject of the transaction. Application of these principles compels the conclusion, therefore, that the trial court erred in granting Herrigel's motion for an involuntary dismissal at the close of plaintiff's proofs. Accepting as true all of plaintiff's evidence, including the stipulation and the favorable inferences that can reasonably be drawn therefrom, a jury could find that when Herrigel sent Bachenberg the truncated report in 1988 concerning the percolation tests, Herrigel knew or should have known that the report would be made available to a prospective buyer and that the buyer would rely on that report.
Moreover, the proofs give rise to a clear inference that Herrigel represented Bachenberg throughout the sales negotiation with plaintiff. In fact, in September 1989, after plaintiff had renounced the deal, Herrigel informed plaintiff's counsel of the two sets of tests, without advising him that there were actually thirty tests performed. A jury might well find that Herrigel should have disclosed the complete information to plaintiff. Consequently, we hold that the trial court erred in granting Herrigel's motion for an involuntary dismissal. We reverse the judgment in his favor and remand the matter to the trial court for a new trial on this issue as well.

IV.
All of the other issues of law raised by plaintiff on this appeal are clearly without merit. R. 2:11-3(e)(1)(E).

V.
Accordingly, the judgment awarding Bachenberg damages in the sum of $16,000, with interest against plaintiff, and the *488 involuntary dismissal of plaintiff's claims against Herrigel on theories of negligence and legal malpractice and against Bachenberg on the theory of fraud, are reversed. The matter is remanded to the trial court for a new trial with respect to Bachenberg and Herrigel consistent with the views expressed in this opinion.