717 A.2d 449 (1998)
Thomas BAGLINI and JoAnn Baglini; Erich Pfisterer and Melitta Pfisterer; Paul Koren and Bernadine Koren; and David Parvin and Melanie Parvin, Plaintiffs,
v.
Frank LAULETTA; and University Executive Campus, Inc., Jeffrey I. Baron, Esquire and Baron & Riefberg, a Professional Corporation, Defendants.
Superior Court of New Jersey, Law Division, Civil Part, Gloucester County.
Decided June 9, 1998.
*450 Dennis M. Crawford (Duffy & Quinn), Haddonfield, for plaintiffs Thomas Baglini, JoAnn Baglini, Paul Koren and Bernadine Koren.
Joseph A. Del Duca (Madden, Madden & Del Duca), Haddonfield, for plaintiffs, Erich Pfisterer, Melitta Pfisterer, David Parvin and Melanie Parvin.
John C. Eastlack, Jr. (Poplar & Eastlack), Turnersville, for defendants Frank Lauletta and University Executive Campus, Inc.
Paul Snyder (Marshall, Dennehey, Warner, Coleman & Goggin), Cherry Hill, for defendants Jeffrey I. Baron, Esq., and Baron & Riefberg, a Professional Corporation.
HOLSTON, J.S.C.
The cause of action asserted in this case is the common law tort of abuse of process. The legal issue addressed by this opinion arises out of the legal representation by Jeffrey Baron, Esq. of Frank Lauletta and University Executive Campus, Inc. (hereinafter UEC), in connection with a lawsuit filed by UEC and Lauletta against the plaintiffs herein (hereinafter Lauletta action). The Lauletta action complaint consisted of eleven counts and sought compensatory and punitive damages in ten of the eleven counts in the amount of $1,000,000 against each of the defendants therein and against Joanne Baglini in each of the eleven counts. The Lauletta action complaint alleged various tort causes of action including tortious interference with prospective economic advantage, intentional interference with business relations, defamation, frivolous litigation and civil conspiracy. The defendants in the Lauletta action are the plaintiffs in this case.
The case's history began in 1990 when three plaintiffs, Melanie Parvin, Erich Pfisterer and JoAnn Baglini, brought a prerogative writs action against Washington Township, and by amendment The Washington Township Planning Board, challenging the rezoning of a certain parcel of property located within Washington Township, Gloucester County, New Jersey. Said parcel was owned by Lauletta and UEC and had been rezoned from residential to highway commercial in order to accommodate Lauletta's plan to build office condominiums on the property. The action was captioned Parvin v. Mayor and Township Council of the Township of Washington, Docket No. GLO-L-1736-90, *451 and was filed on July 1, 1990. Lauletta and UEC intervened in this prerogative writs action. Thereafter, on August 24, 1990, UEC and Lauletta filed and served the eleven count Lauletta action against the prerogative writ plaintiffs and further sued their spouses Thomas Baglini, Melitta Pfisterer and David Parvin, respectively, as well as Paul and Bernadine Koren. This action was captioned UEC v. Baglini, et al under Docket No. GLO-L-2115-90. Baron represented UEC and Lauletta in the initiation and prosecution of the Lauletta action. Plaintiffs have characterized the Lauletta action as a Strategic Lawsuit Against Public Participation (hereinafter "SLAPP") and accordingly consider the filing and prosecution of this lawsuit to constitute the tort of abuse of process. In support of this contention, plaintiffs allege that the Lauletta action was filed for the sole purpose of intimidating them into dismissing their prerogative writs action which sought to invalidate a zoning change enacted by the Washington Township Council on recommendation of the Township Planning Board. Moreover, plaintiffs allege that the intent of the Lauletta action was to stifle the exercise of plaintiffs' First Amendment right to petition the judicial branch of the government for a redress of grievances. See U.S. Const., amend. I; N.J. Const. of 1947, art. I, para. 18.
By order entered December 29, 1991, in the prerogative writs action, the interveners' motion for summary judgment was denied as a result of this court's conclusion that Washington Township Ordinance 6-1989 was void and of no force and effect. This court's order was stayed until April 15, 1992, to enable the governing body of Washington Township to enact a new ordinance if it so desired. Thereafter, by order dated April 22, 1992, as a result of Washington Township having not adopted a new ordinance, this court granted the plaintiff's motion for summary judgment thereby declaring Washington Township Ordinance 6-1989 void ab initio with no further stay.
The Lauletta action was dismissed by this court with prejudice on April 16, 1992. Thereafter, the plaintiffs herein sued Lauletta and UEC alleging, inter alia, the tort of abuse of process. On or about October 8, 1996, Lauletta and UEC sued their attorney, Baron, and Baron's law firm, Baron & Riefberg, P.C., alleging that the initiation and prosecution of the Lauletta action was based upon Baron's advice and counsel. Plaintiffs' direct claim against Baron and Baron & Riefberg, P.C., for abuse of process followed.
During the trial of this matter, defendants brought a motion in limine seeking to bar the testimony of John Trimble, Sr., Esq., (hereinafter "Trimble"), counsel for the plaintiffs in the prerogative writs action. In support of their motion, defendants argued that statements allegedly uttered by defendant Baron to Trimble during the deposition of Lauletta in the Lauletta action as well as statements made during the course of settlement negotiations for the Lauletta action were protected by the litigation privilege since the statements were made in the course of judicial proceedings. As such, the alleged statements could not constitute the "further acts" necessary to support a cause of action for abuse of process. Plaintiffs opposed and argued that defendants use of the Lauletta action for an ulterior purpose bars the application of the privilege in that an abuse of process claim is inherently inimical to a litigation privilege.
After thorough briefing and exhaustive oral argument, this court denied the defendants' motion. This motion was later reasserted at the end of the plaintiffs' case and again denied. This opinion expounds upon and amplifies the court's reasoning for denial of the defendants' motion heretofore placed on the record in open court.
The novel issue, which has not been directly addressed by judicial opinion in this state, is whether the absolute privilege for statements made in judicial proceedings should be permitted to insulate parties and attorneys for parties from suits for abuse of process. Stated more precisely, the issue before this court is whether statements uttered at a deposition and in the course of settlement negotiations may constitute the "further acts" necessary to sustain a cause of action for abuse of process or does the litigation privilege preclude the court from making evidentiary use of such statements. This court concludes that the litigation privilege is *452 not properly applied to an abuse of process action.
An action for abuse of process lies against any person making an improper, illegal and perverted use of the legal procedure. Tedards v. Auty, 232 N.J.Super. 541, 557 A.2d 1030 (App.Div.1989); Ash v.. Cohn, 119 N.J.L. 54, 58, 194 A. 174 (E. & A.1937). The Restatement (Second) of Torts, § 682 at 474 (1977), notes that the gravamen of the action for abuse of process is the use of "a legal process ... against another primarily to accomplish a purpose for which it is not designed." The two essential elements of abuse of process are (1) ulterior-motive; and (2) some further act after issuance of process representing the perversion of the legitimate use of process. Tedards, at 550, 557 A.2d 1030 (quoting Gambocz v. Apel, 102 N.J.Super. 123, 245 A.2d 507 (App.Div.1968) certif. denied 52 N.J. 485, 246 A.2d 447 (1968)); Fleming v. UPS, 255 N.J.Super. 108, 157, 604 A.2d 657 (Law Div.1992). This decision addresses the further act element in the context of the litigation privilege.
Although the facts are in dispute, plaintiffs proffer the following versions of two incidents as evidence of defendants' "further acts." The first further act alleged was the effort on defendants' part to have Trimble disqualified from representing the three prerogative writ plaintiffs as well as the eight Lauletta action defendants on the basis that Anthony Alberto, a former client of Trimble, and a then present partner of Trimble in a real estate venture, held an ownership interest in University Executive Campus when, in fact, no shares of stock had ever been issued to Alberto. Plaintiffs claim that defendants utilized the alleged conflict of interest without divulging all pertinent facts in an effort to coerce Trimble to withdraw from the case. The alleged conflict of interest was first brought to light during the February 1, 1991 deposition of Lauletta in the Lauletta action, when both Baron and Lauletta insisted that Alberto had a ten percent stock ownership in UEC and that such ownership interest represented a direct conflict of interest to Trimble. Plaintiffs claim that contrary to defendants' representation, Alberto was not, in fact, such a stockholder. Therefore, Trimble's representation of three of the eight plaintiffs in the Prerogative Writs action and defending all 8 defendants in the Lauletta action would not constitute a conflict of interest. In other words, Trimble would not be suing a former client without his permission because the former client, Alberto, was not such a shareholder at the time of Trimble's representation of three of the eight plaintiffs in the prerogative writs action against UEC, a party in that action as a result of its intervention. Plaintiffs claim that Baron erroneously represented to Trimble that Alberto had an ownership interest in UEC which would present a conflict of interest necessitating Trimble's withdrawal. Plaintiffs further claim that this act was designed to intimidate plaintiffs into dismissing the prerogative writs action. Thus, plaintiffs allege that attorney Baron's remarks at Lauletta's deposition constituted an improper "further act" after issuance of process representing the perversion of the legitimate use of process.
Plaintiffs further alleged as a second "further act" what they assert was a wrongful act on the part of the defendants at a settlement conference called for by the defendants shortly after the deposition of Lauletta. The purported settlement conference was held at Trimble's office on a Saturday morning with Lauletta present. Plaintiffs allege that although the settlement conference was ostensibly called for the purpose of settling the Lauletta action, that its real purpose was otherwise. Namely, plaintiffs contend that at the settlement conference, Baron demanded of Trimble that the prerogative writs action be dismissed in exchange for the Lauletta action being dismissed or the Lauletta action (asserting more than one million dollars in damages) was going to proceed. Plaintiffs contend that this act by defendants was in furtherance of a perverted use of process and revealed an ulterior purpose because its true purpose was not to settle fairly a claim of injury by Lauletta but rather to intimidate the plaintiffs into withdrawing the prerogative writs action.
Since both of the alleged "further acts" occurred within the context of judicial proceedings, the first act taking place at a deposition and the latter coming to pass during *453 the course of settlement negotiations, the court will next address the scope of the absolute immunity afforded by the litigation privilege.
It is well settled that absolute immunity is afforded judges, attorneys, witnesses, parties and jurors to provide them complete protection against tort actions based upon utterances having some relation to judicial proceedings. Rainier's Dairies v. Raritan Valley Farms, 19 N.J. 552, 558, 117 A.2d 889 (1955); Hawkins v. Harris, 141 N.J. 207, 219, 661 A.2d 284 (1995). Our Supreme Court requires the following four conditions in order to invoke the privilege:
(1) the statement must be made in connection with a judicial or a quasi-judicial proceeding;
(2) by litigants, counsel, or other participants authorized by law; (3) to achieve the objects of litigation; and (4) the statement must have some connection or logical relation to the action. Hawkins, 141 N.J. at 216, 661 A.2d 284. In moving to dismiss plaintiffs' claims against Baron and Lauletta as well as seeking to bar Trimble from testifying, defendants fail to squarely meet these essential elements of the litigation privilege. Specifically, this court is of the view that defendants have failed to satisfy the third and fourth prongs of the Hawkins equation.
Defendants cite Ruberton v. Gabage, 280 N.J.Super. 125, 132, 654 A.2d 1002 (App.Div. 1995) as standing for the proposition that statements made during the course of judicial proceedings are subject to the litigation privilege and cannot be made the basis for an abuse of process claim. However, this court does not believe that Ruberton stands for such a broad proposition, especially in light of the Appellate Division's holding in Tedards v. Auty, supra. See also Ackerman v. Lagano, 172 N.J.Super. 468, 471, 412 A.2d 1054 (Law Div.1979).
In Ruberton, a former employee sued his former employer and its attorneys for fraud, negligence, malicious abuse of process and malicious interference. Specifically, the plaintiffs alleged that "threats" made by the defendant attorney during a settlement conference constituted a malicious abuse of process. As an initial matter, it must be emphasized that the Ruberton court held that a cause of action for abuse of process did not exist since "no process had in fact been issued," Id. at 131, 654 A.2d 1002; See also 97 A.L.R.3d 688, 705 (1980 & Supp.1997), infra. Moreover, the settlement conference, which plaintiff claimed to be the "process" at issue, was considered by the court to be but "one step in the whole course of a legal proceeding." Ruberton 280 N.J.Super. at 131, 654 A.2d 1002. This case differs from Ruberton in that the filing and service of the complaint in the Lauletta action clearly constituted the issuance of process. Furthermore, as a prerequisite to finding that the defendant attorney's statements in Ruberton were afforded the protection of the privilege, the court found that they were legitimately related to the litigation.
The critical distinction between Ruberton and the case at bar is that the court in Ruberton limited its examination of the litigation privilege to the context of a legitimate underlying suit. Thus, Ruberton held that statements made during a judicial proceeding, i.e. a settlement conference called by a judge, in furtherance of resolving a seemingly meritorious claim, are indeed covered by the litigation privilege. However, this court is presented with a noticeably different situation since it is the meritorious nature of the underlying action which is being challenged by the plaintiffs. Moreover, Ruberton would apply if the statement at issue here (namely, that the Lauletta litigation would proceed unless the Baglini litigation was dismissed) was uttered during a settlement conference for Parvin's ostensibly meritorious prerogative writs action. The settlement conference at issue here was allegedly called for by Baron for the apparent purpose of discussing settlement of the Lauletta action. The legitimacy of the prerogative writs action has not been challenged, whereas the allegedly abusive complaint filed by Lauletta served as the impetus for the plaintiffs' filing of the present action. Indeed, the prerogative writs action resulted in an order for summary judgment being entered in plaintiffs' favor on April 22, 1992, declaring Washington Township Ordinance 6-1989 void ab initio.
Defendants have further failed to reconcile their argument with the Appellate Division *454 decision in Tedards v. Auty, supra. In Tedards, a husband against whom a writ of ne exeat was issued brought an abuse of process action against his wife's former attorney. As a result of the husband's apparent failure to comply with a portion of a divorce judgment equitably distributing property, i.e., the spouses respective interest in real estate owned in Washington, D.C., the wife's former attorney prepared an application for a writ of ne exeat. In support of this application, the attorney included a certification by the plaintiff's wife. The plaintiff contended that the attorney knew of the falsity of the wife's certification. In particular, plaintiff claimed that the defendant knowingly misrepresented to the court that the husband was a resident of Washington, D.C. and would not appear to answer process in New Jersey. The Plaintiff in Tedards also alleged that during the course of settlement negotiations, Auty used the writ as a means of attempting to coerce plaintiff to pay defendant his legal fees and to pay plaintiff's wife the full amount of her demands. In a letter apparently written after oral settlement had been reached, defendant Auty wrote to plaintiff's attorney, "If my client does not have the [settlement] monies by Friday, February 24, 1984, then I shall move to enforce the writ." 232 N.J.Super. at 548, 557 A.2d 1030.
Thus, in Tedards, the underlying process, i.e., the writ of ne exeat, was allegedly baseless and was obtained under false pretenses. It is important to note that the later settlement conference was not the principal focus of the illicit conduct. Rather it constituted the further act. Specifically, the court noted
that where there is a genuine issue as to whether a defendant's further acts were maliciously intended as an abuse of process, the plaintiff may demonstrate that the defendant had secured issuance of the process without reason or probable cause as evidence that his ultimate intent was to use it for a purpose ulterior to the one for which it was designed.
Id. at 550, 557 A.2d 1030. While Tedards does not reach the issue of whether the litigation privilege is properly applied to an abuse of process action, it is clear that the court considered the settlement discussion and letter proper evidence of a further act.
This case is more akin to Tedards. The underlying action is purported to be baseless. That is, plaintiffs insist that the Lauletta litigation was filed for the ulterior purpose of intimidating the defendants therein into dismissing their prerogative writs action and ultimately to silence their opposition to Lauletta's proposed office condominium project. Plaintiffs sought at trial to prove further acts with testimony from Trimble, plaintiff's former counsel, concerning the alleged true purpose of the settlement conference. It is not these actions, however, which formed the basis of plaintiffs' claim. That is, plaintiffs are not suing Lauletta and Baron because of the leveraged settlement conference or the fabricated conflict. Plaintiffs are simply alleging, just as in Tedards, that these actions constitute further acts, and that a jury may look back to the illicit filing of the Lauletta litigation to see that, indeed, they form the requisite acts. Tedards, 232 N.J.Super. at 550-51, 557 A.2d 1030.
Ackerman v. Lagano, 172 N.J.Super. 468, 412 A.2d 1054 (Law Div.1979) is also analogous to this action. In Ackerman, a physician sued an attorney for malicious prosecution and malicious use of process for the attorney's initiation and prosecution of a medical malpractice claim against him. The issue before the Ackerman court was whether such causes of action are properly brought against an opposing attorney, given the limited extent to which attorneys may be liable to persons other than their clients. Id. at 470, 412 A.2d 1054. The court found that no reasonable basis exists to immunize attorneys from civil liability where it can be shown that their malicious use of the judicial process has injured third persons. Id. at 472-73, 412 A.2d 1054. Likewise, this court holds that no reasonable basis exists to immunize attorneys from civil liability where it can be shown that they have abused process which has injured third persons. See Annotation, Civil Liability of Attorney for Abuse of Process, 97 A.L.R. 3d 688 (1980).
While this state has never addressed the issue of the applicability of the litigation privilege to an abuse of process action, other *455 jurisdictions have dealt with similar matters. The reasoning of the court in Goldstein v. Serio, 496 So.2d 412 (La.Ct.App.1986), a Louisiana case, is particularly instructive. In that action, attorneys brought an action against their former clients seeking damages for defamation, malicious prosecution, and abuse of process after defendants' complaints to the State Bar Committee on Professional Responsibility were dismissed based on the Committee's finding that there was "no showing of any unethical conduct." Id. at 413. An absolute privilege of clients to make communications was asserted as an affirmative defense to the abuse of process complaint. In reversing the decision of the trial court the court held that,
An abuse of process action cannot be defeated by the defense of absolute privilege. Abuse of process involves the misuse of a process already legally issued whereby a party attempts to obtain a result not proper under the law. At issue in such action is the intent to use a legal process for an improper reason, not the statements made. In both malicious prosecution and abuse of process, the crux of the action is not the statements made but the fact that the proceeding was maliciously and/or illegally pursued. Therefore, the affirmative defense of absolute privilege does not defeat plaintiffs' malicious prosecution and abuse of process actions on the merits.

Id. at 415.
In Bull v. McCuskey, 96 Nev. 706, 615 P.2d 957 (1980), a physician brought an abuse of process action against an attorney, contending that the attorney instituted a medical malpractice suit against him for the ulterior purpose of coercing a nuisance settlement, knowing that there was no legitimate basis for the claimed malpractice. Id. at 707, 615 P.2d 957. Defendant appealed the judgment entered upon jury verdict arguing that the evidence was insufficient to establish the tort of abuse of process. Id. In affirming the jury award, The Supreme Court of Nevada held that it was permissible for the jury to conclude that attorney Bull had utilized an alleged claim of malpractice for the ulterior purpose of coercing a nuisance settlement. Id. at 708, 615 P.2d 957. Specifically, the Bull court noted that
[Defendant's] offer to settle the case for the minimal sum of $750 when considered in the light of his failure adequately to investigate before deciding to file suit and the total absence of essential expert evidence supports such a conclusion by the jury and we may not set it aside.

Id. at 708, 615 P.2d 957.
Thus, while the decision is silent as to whether the affirmative defense of absolute immunity was raised with respect to the statements made during the course of settlement negotiations, it is clear that the Bull court permitted these statements to be considered by the jury.
In Oren Royal Oaks Venture v. Greenberg, Bernhard, Weiss & Karma, Inc., 42 Cal. 3d 1157, 728 P.2d 1202, 232 Cal.Rptr. 567 (1986), the California Supreme Court likewise had occasion to determine what role the statutory privilege for statements made in the course of judicial proceedings play in an abuse of process action. In Oren, the court concluded that California's statutory privilege does not bar the evidentiary use of such statements to establish motive with which a defendant in an abuse of process action acted. Id. at 1159, 232 Cal.Rptr. 567, 728 P.2d 1202. The court commented that unlike defamation and other torts that generally apply to conduct outside the judicial context, abuse of process is peculiarly concerned with conduct within the judicial process. Id. at 1167, 232 Cal.Rptr. 567, 728 P.2d 1202. Moreover, if the privilege were applied in the abuse of process context in the same manner as it applies to other torts, the privilege would largely eliminate the entire abuse of process tort. Id. The court recognized that the privilege was never thought to bar the evidentiary use of every statement or publication made in the course of judicial proceedings. Id. at 1168, 232 Cal. Rptr. 567, 728 P.2d 1202. It further recognized that answers to interrogatories and deposition testimony are voluntarily admitted into evidence and relied upon in determining liability. Id. Accordingly, when allegations of misconduct properly put an individual's intent at issue in a civil action, statements made in judicial proceedings may be used for *456 evidentiary purposes in determining whether an individual acted with the requisite intent. Id. Thus, the court concluded that if such conduct could properly support a cause of action for abuse of process, the statutory privilege would not preclude evidentiary use by the plaintiff of the defendant's statement made during negotiations to prove the intent with which defendant's conduct was undertaken. Id.
Defendants cite Seidner v. 1551 Greenfield Owners Association, 108 Cal.App. 3d 895, 166 Cal.Rptr. 803 (Cal.Ct.App.1980), as out of state authority to the contrary. This court believes that case, which predates the California Supreme Court decision of Oren Royal Oaks Venture v. Greenberg, Bernhard, Weiss & Karma, Inc., supra, to be inapposite. In Seidner, the appellant argued that the defendants' filing of a corporate law suit constituted an abuse of process since the action was filed for the sole purpose of coercing settlement in a previously filed partnership suit. 166 Cal.Rptr. at 805. The court held that the comments which predated the filing of the complaint, and the mere filing of the complaint itself, were insufficient to establish the tort of abuse of process. Id. at 808. Moreover, the statements were not alleged as further acts after the issuance of process, nor could they be, because the statements at issue predated the filing of the complaint.
This court therefore holds that the litigation privilege is inapplicable to (1) the alleged statement of defendant Baron uttered to Trimble at the deposition of Lauletta concerning an arguably nonexistent conflict of interest and (2) the statement of Baron allegedly made to Trimble during settlement negotiations for the Lauletta action. Moreover, this court finds that Ruberton does not require that Baron be afforded such protection, especially when measured against Tedards. Under the facts in this case as alleged by the plaintiffs, a fabricated conflict and a settlement conference, together with an illicit underlying cause of action, cannot be said to further the legitimate purposes of litigation. This court believes that at its core, an abuse of process claim is inherently inimical to a litigation privilege and taken to its logical extreme, could emasculate the tort entirely. Accordingly, both of the alleged statements of defendant Baron, made with the full authority of his client, Lauletta and in his presence, are not protected by the litigation privilege and may therefore serve as "further acts" to support plaintiffs' abuse of process claim. Therefore, Trimble was properly permitted to testify at trial as to the content of his discussion at Lauletta's deposition concerning an alleged conflict of interest and as to his settlement discussions with defendant Baron. That testimony, having been properly admissible, provided sufficient evidence of the further acts necessary to create a jury question as to whether the tort of abuse of process had been proven against either or both defendants.
Accordingly, the motion in limine and the motion for a directed verdict at the end of the plaintiff's case and at the conclusion of all the evidence were denied. R. 4:40-1; Dolson v. Anastasia, 55 N.J. 2, 5, 258 A.2d 706 (1969).