280 N.J. Super. 125 (1995)
654 A.2d 1002
JAMES A. RUBERTON AND LORETTA RUBERTON, PLAINTIFFS-APPELLANTS,
v.
CHARLES W. GABAGE, ESQUIRE, EISENSTAT, GABAGE & BERMAN, P.A., A NEW JERSEY PROFESSIONAL CORPORATION, AGWAY PETROLEUM CORPORATION, CHRISTOPHER FOX, AGWAY, INC., ROBERT J. KUTIL, JOINTLY, SEVERALLY AND IN THE ALTERNATIVE, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued December 5, 1994.
Decided March 10, 1995.
*127 Before Judges HAVEY, BROCHIN and CUFF.
Clifford L. Van Syoc, argued the cause, for appellants (Mr. Van Syoc, on the briefs).
Francis X. Crahay, argued the cause, for respondents Charles W. Gabage, Esq. and Eisenstat, Gabage & Berman, P.A. (Tompkins, *128 McGuire & Wachenfeld, attorneys; Mr. Crahay, of counsel; George Gerard Campion, on the brief).
Stacy L. Moore, Jr., argued the cause, for respondents Agway Petroleum Corp., Christopher Fox, Agway, Inc. and Robert J. Kutil (Parker, McCay & Criscuolo, P.C., attorneys; Mr. Moore, on the brief).
The opinion of the court was delivered by HAVEY, J.A.D.
Plaintiffs appeal from summary judgment orders dismissing their complaint against defendants sounding in fraud, negligence, malicious abuse of process and malicious interference. They also appeal from pretrial determinations that their emotional distress claims were time-barred under N.J.S.A. 2A:14-2, and denying their motion to amend their complaint to name William V. Webster, Jr., Esq. and his law firm as party-defendants.
The central issues in this case are: (1) whether a defense attorney's threat that his client intends to file criminal charges against the plaintiff, made purportedly to gain an advantage in the civil litigation, constitutes a malicious abuse of process and, if so; (2) is the threat protected by the absolute immunity privilege afforded to statements made during judicial proceedings. In granting summary judgment to defendants, Judge Supnick concluded that the statements did not constitute an abuse of process. Alternatively, he determined that even if plaintiffs had made out a prima facie case of abuse of process, the statements were protected by the absolute immunity privilege. We agree on both points, and affirm.
In 1983, plaintiff James A. Ruberton was terminated from his managerial position at defendant Agway Petroleum's Hammonton plant. He and his wife thereupon instituted a wrongful discharge action against Agway Petroleum and its parent, Agway, Inc. Defendant Charles W. Gabage, Esq. represented Agway Petroleum and William V. Webster, Jr. Esq. represented Agway, Inc. in the wrongful discharge case.
On July 7, 1986, a settlement conference was conducted, attended by Richard L. Press, Esq., attorney for plaintiff, Gabage, *129 Webster and the trial judge. According to Ruberton, during the conference Gabage extended, on behalf of Agway Petroleum, a $10,000 settlement offer to Press. Press told him that Gabage, in making the settlement offer, suggested that Ruberton use the money to hire a criminal defense lawyer to defend him in a criminal action Agway Petroleum was contemplating filing against him. The criminal charge was predicated upon certain alleged improprieties by Ruberton while he was an Agway Petroleum plant manager.
On September 12, 1986, Gabage forwarded a letter to Press setting forth the names of witnesses and individuals Agway Petroleum wished to depose. The letter advised Press that Agway Petroleum's investigation, presumably in support of the potential criminal complaint of plaintiff, had determined that inventory records had been falsified, payroll expense records had been manipulated and Ruberton's telephone credit card benefits had been abused.
On or about February 4, 1987, plaintiffs settled the wrongful discharge action with Agway Petroleum and Agway, Inc. for $90,000. According to Ruberton, at the time of the settlement Press told Ruberton that Agway Petroleum intended to prosecute if Ruberton refused to settle.
Plaintiffs filed the present complaint against Gabage, his law firm and the Agway defendants. The gravamen of the complaint is that Agway Petroleum and Gabage fraudulently induced plaintiffs to settle the wrongful discharge action by making unethical and unlawful threats of criminal prosecution if Ruberton did not settle the case. Plaintiffs' complaint sounds in malicious abuse of process, negligent misrepresentation, fraud, intentional infliction of emotional distress and malicious interference with prospective economic advantage.
In granting summary judgments to defendants, Judge Supnick found that Gabage's conduct during and subsequent to the settlement conference did not constitute a malicious abuse of process. Alternatively, the judge held that "the doctrine of absolute immunity in matters involving ... settlements such as took place in this instance" controls, and thus bars plaintiffs' claims.

*130 I
Plaintiffs first argue that Gabage's "threat" during the July 7, 1986 settlement conference regarding prosecution of Ruberton constituted a malicious abuse of process. They reason that the "process" abused "was that of the civil court in calling the plaintiff to the court house for purposes of a settlement conference, coupled with the expressed threat of utilizing the criminal process." In support of the argument plaintiffs point to RPC 3.4(g) which provides that a lawyer shall not "present, participate in presenting, or threaten to present criminal charges to obtain an improper advantage in a civil matter." (Emphasis added). Plaintiffs assert that "[g]iven the undeniable fact that the conduct complained of on the part of attorney Gabage is expressly prohibited [by RPC 3.4(g)] and was undoubtedly known to be unlawful conduct, such conduct is malicious as a matter of law and is sufficient to support a claim for abuse of process."
Even if the attorney's statements during the settlement conference were a "threat" which violated the RPC 3.4(g), his conduct did not constitute a malicious abuse of process.
First, an attorney's violation of an ethics rule does not in itself establish a cause of action in tort. Petrillo v. Bachenberg, 263 N.J. Super. 472, 483, 623 A.2d 272 (App.Div.), certif. granted, 134 N.J. 566, 636 A.2d 523 (1993); Albright v. Burns, 206 N.J. Super. 625, 634, 503 A.2d 386 (App.Div. 1986).
Second, malicious abuse of process involves the "`improper, unwarranted and perverted use of process after it has been issued....'" Tedards v. Auty, 232 N.J. Super. 541, 549, 557 A.2d 1030 (App.Div. 1989) (quoting Ash v. Cohn, 119 N.J.L. 54, 58, 194 A. 174 (E. & A. 1937)). "Process" is not abused unless "after its issuance the defendant reveals an ulterior purpose he had in securing it by committing `further acts' whereby he demonstrably uses the process as a means to coerce or oppress the plaintiff." Tedards, 232 N.J. Super. at 550, 557 A.2d 1030 (quoting Gambocz v. Apel, 102 N.J. Super. 123, 130, 245 A.2d 507 (App.Div.), certif. denied, 52 N.J. 485, 246 A.2d 447 (1968)). In the absence of some "coercive or illegitimate use of the judicial process there can be no *131 claim for its abuse." Penwag Property Co. v. Landau, 148 N.J. Super. 493, 499, 372 A.2d 1162 (App.Div. 1977), aff'd, 76 N.J. 595, 388 A.2d 1265 (1978). Thus, "there can be no abuse of process without use. If the process is not used at all no action can lie for its abuse." Earl v. Winne, 34 N.J. Super. 605, 615, 112 A.2d 791 (Law Div. 1955). See also, Restatement (Second) of Torts § 682 at 474 (1977) ("[t]he gravamen of the misconduct ... is the misuse of process...."); and see Prosser & Keeton on Torts § 121 at 898-899 (5th ed. 1984).
"Process," as used in the above-cited cases, refers to the abuse of procedural methods used by a court to "acquire or exercise its jurisdiction over a person or over specific property." Black's Law Dictionary 1084 (5th ed. 1979). This use of the term "process" includes the "summons, mandate, or writ used by a court to compel the appearance of the defendant in a legal action or compliance with its orders[.]" Webster's Ninth New Collegiate Dictionary 937 (1986). For example, Prosser & Keeton notes that:
Many kinds of process have lent themselves to extortion, including attachment, execution, garnishment, sequestration proceedings, arrest of the person and criminal prosecution and even such infrequent cases as the use of a subpoena for the collection of a debt.
[§ 121 at 899.]
Thus, the abuse of "process" in Ash v. Cohn, 119 N.J.L. at 59, 194 A. 174, was a corrupt use of a writ of execution, and in Tedards, 232 N.J. Super. at 543-44, 557 A.2d 1030, the claim was that the use of a writ of ne exeat was to coerce or injure the plaintiff. This narrow use of "process" must be distinguished from the general use, as being "the whole course of proceedings in a legal action." Webster's Ninth New Collegiate Dictionary at 937.
Here, Gabage did not unlawfully "misuse" process. No "process" had in fact been issued. He did not cause the issuance of an order scheduling the settlement conference and thereafter commit further acts demonstrating an intent to use the order as a means to coerce Ruberton. Tedards, 232 N.J. Super. at 550, 557 A.2d 1030. The settlement conference was simply one step in the whole course of a legal proceeding. Moreover, it was the Law Division judge who scheduled the conference and Gabage simply appeared *132 in obedience to the judge's directive. That Gabage's conduct or statements during the conference may have been otherwise tortious or violated ethical standards, does not mean that he misused "process" for a corrupt purpose.

II
Judge Supnick also found that, even if tortious, Gabage's "threats" were protected by the absolute privilege afforded in judicial proceedings. We agree.
A statement made in the course of judicial, administrative or legislative proceedings is absolutely privileged and wholly immune from liability. Erickson v. Marsh & McLennan Co., 117 N.J. 539, 563, 569 A.2d 793 (1990); Rainier's Dairies v. Raritan Valley Farms, Inc., 19 N.J. 552, 558, 117 A.2d 889 (1955). The absolute immunity privilege is predicated on "the need for unfettered expression critical to advancing the underlying government interest at stake in those settings." Erickson, 117 N.J. at 563, 569 A.2d 793. See also Dairy Stores, Inc. v. Sentinel Pub. Co., 104 N.J. 125, 136, 516 A.2d 220 (1986); Geyer v. Faiella, 279 N.J. Super. 386, 390, 652 A.2d 1245 (App.Div. 1995).
In Rainier's Dairies, the Supreme Court held that alleged defamatory statements made in a verified complaint filed during quasi-judicial proceedings were protected against an action for libel and malicious interference of plaintiff's business. 19 N.J. at 563-64, 117 A.2d 889. The Court noted that in both judicial and quasi-judicial proceedings the potential harm which may result from the absolute privilege is mitigated by formal requirements such as notice and hearing, the comprehensive control exercised by the trial judge whose action is reviewable on appeal, "and the availability of retarding influences such as false swearing and perjury prosecutions[.]" Id. at 562, 117 A.2d 889. The Court also observed that:
The most noteworthy illustration of the absolute privilege or immunity is that afforded in judicial proceedings where judges, attorneys, witnesses, parties and *133 jurors are fully protected against defamation actions based on utterances made in the course of the judicial proceedings and having some relation thereto.
[19 N.J. at 558, 117 A.2d 889 (emphasis added).]
See also, Prosser & Keeton, § 114 at 817 ("the privilege extends to counsel in the conduct of the case").
Moreover, in concluding that plaintiff's malicious interference claim, as well as its defamation claim, arising out of the quasi-judicial pleadings was subject to the absolute immunity privilege, the Rainier's Dairies Court reasoned:
If the policy, which in defamation actions affords an absolute privilege or immunity to statements made in judicial and quasi-judicial proceedings, is really to mean anything then we must not permit its circumvention by affording an almost equally unrestricted action under a different label.

[19 N.J. at 564, 117 A.2d 889 (emphasis added).][1]
Absolute immunity is not limited to what a person may say under oath while on the witness stand; it extends to all statements or communications in connection with the judicial proceeding. Durand Equip. Co. v. Superior Carbon Products, Inc., 248 N.J. Super. 581, 584, 591 A.2d 987 (App.Div. 1991); DeVivo v. Ascher, 228 N.J. Super. 453, 457, 550 A.2d 163 (App.Div. 1988), certif. denied, 114 N.J. 482, 555 A.2d 607 (1989); Kanengiser v. Kanengiser, 248 N.J. Super. 318, 332, 590 A.2d 1223 (Law Div. 1991).
On appeal plaintiffs focus on Gabage's "threats" made during a settlement conference. Therefore, the "threats" were unquestionably made during the course of a judicial proceeding. Cf. Geyer, 279 N.J. Super. at 392, 652 A.2d 1245 (initial complaint to law enforcement officials about alleged crime committed by plaintiff protected by qualified, not absolute, privilege). Moreover, during such conferences an attorney must be free to advance *134 the strengths of his or her client's case in a candid and objective way, unfettered by the fear that the attorney may be the subject of a tort action, whether sounding in defamation or any other "action under a different label." Rainier's Dairies, 19 N.J. at 564, 117 A.2d 889. Indeed, during the conference counsel may well report that investigation has disclosed the fact that the adverse party had committed wrongdoings. Such disclosure by counsel may be in support of a defense to the adverse party's affirmative action, or may tend to minimize that party's damage claim. If these wrongdoings are undeniably criminal in nature, counsel should not be gagged from commenting on them by fear of civil suit. Of course, counsel's comments are subject to "the comprehensive control exercised" by the trial judge. Id. at 562, 117 A.2d 889. Also, counsel walks a fine line in view of RPC 3.4(g). It must be emphasized that the absolute privilege, as defined by Rainier's Dairies, applies to claims of tortious conduct; it does not apply to a claim of unprofessional conduct, or to summary contempt proceedings against the offending attorney. See R. 1:10-1.[2] Defendants concede as much.
Plaintiffs raise the following additional two contentions:

Point III  Plaintiffs' damage claims for emotional distress resulting from the defendants' intentional and malicious misconduct is not subject to a two year statute of limitations.

Point IV  The Law Division erred in refusing to permit plaintiffs to amend their complaint to assert claims against William Webster, Jr., squire, and his law firm based on their participation in the abuse of process.
We have considered the contentions and supporting arguments and are satisfied they are completely without merit. R. 2:11-3(e)(1)(E); N.J.S.A. 2A:14-2; Montells v. Haynes, 133 N.J. 282, 292, 627 A.2d 654 (1993); Goncalvez v. Patuto, 188 N.J. Super. 620, 630, 458 A.2d 146 (App.Div. 1983); Fleming v. United Parcel *135 Service, Inc., 255 N.J. Super. 108, 165, 604 A.2d 657 (Law Div. 1992), aff'd, 273 N.J. Super. 526, 642 A.2d 1029 (App.Div.), certif denied, 138 N.J. 264, 649 A.2d 1285 (1994).
Affirmed.
NOTES
[1] The Court, however, held that while a malicious interference claim is barred by the privilege, the principles "supporting an action in the nature of malicious prosecution, which by its severe restrictions gives due recognition to the counter-policy in favor of free access to judicial and quasi-judicial bodies, may be invoked." 19 N.J. at 564, 117 A.2d 889. Plaintiffs have not asserted a malicious prosecution claim here.
[2] We are also of the view that the absolute privilege would not have precluded plaintiffs from seeking to vacate the settlement on the basis that the settlement in the underlying wrongful discharge case was coerced, or based on any other grounds under R. 4:50-1. Plaintiffs never made such a motion. We do not express any view as to whether, if made, such a motion would be meritorious.