Charles L. THOMASON, Plaintiff,

v.

Norman E. LEHRER, P.C., and Norman E. Lehrer, Defendants.

CIV.A. No. 98–2336.

United States District Court,
D. New Jersey.

Oct. 27, 1998.

Charles L. Thomason, Red Bank, NJ, pro se.

Norman E. Lehrer, Norman E. Lehrer, P.C., Cherry Hill, NJ, Attorneys for Defendants, Norman E. Lehrer, P.C. and Norman E. Lehrer.

## OPINION

ORLOFSKY, District Judge.

On August 21, 1998, Plaintiff, Charles L. Thomason, Esq. ("Thomason"), was Ordered to Show Cause by this Court why the remaining state-law counts of his Second Amended Complaint against Defendants, Norman E. Lehrer, P.C. and Norman E. Lehrer, Esq. (collectively "Lehrer"), should not be dismissed based upon the "litigation privilege" recognized by New Jersey law. In *Thomason v. Lehrer*, 182 F.R.D. 121, 123–24, 132–33 (D.N.J.1998), Count I of the Second Amended Complaint, which alleged a federal civil rights claim for abuse of process, was dismissed by this Court for failure to state a claim upon which relief can be granted. Counts II through IV of the Second Amended Complaint allege only state-law claims against Lehrer: negligent misrepresentation (Counts II–III); and tortious interference (Count IV). The Court has supplemental jurisdiction over Thomason's state law claims pursuant to 28 U.S.C. § 1367(a).

Thomason's state-law claims against Lehrer are based upon statements made by Lehrer in an amended answer and counterclaim filed on behalf of a client in another action pending before this Court. *See Waterloov Gutter Protection Systems Co., Inc. v. Absolute Gutter Protection, LLC, et al.,* Civil Action No. 97–2554, 1998 WL 166589 (SMO) ("*Waterloov* action"). Rather than seeking redress in this Court against Lehrer, Thoma-

son filed a civil rights action against Lehrer in the Superior Court of New Jersey. Lehrer removed the case to this Court. For the reasons set forth below, I will dismiss Thomason's remaining state law claims for failure to state a claim upon which relief can be granted based upon New Jersey's "litigation privilege" which affords absolute immunity to attorneys, parties, and their representatives for statements made in the course of judicial proceedings.

▪ In addition, in the exercise of this Court's inherent powers, I hold that an attorney who seeks to assert an abuse of process claim against an attorney-adversary based upon conduct which occurred in a case pending before a United States District Court, must seek redress in the District Court, and not in state court.

A United States District Court possesses an arsenal of remedies to address such litigation abuse by members of its bar. To allow such claims to be brought in state court unnecessarily burdens the state courts with "satellite litigation" produced by the unseemly acrimony between counsel in a federal court proceeding. More importantly, to allow such disputes to spill over into state court encourages forum shopping, judge shopping, and the unfortunate multiplication of litigation. Attorneys who engage in such conduct dishonor the legal profession and should understand that judges will no longer tolerate the presentation of abusive and baseless litigation against a colleague. A vendetta masquerading as a lawsuit is not likely to escape judicial scrutiny. As Justice Cardozo once noted: "[W]e are not to close our eyes as judges to what we must perceive as men." *People ex rel. Alpha Portland Cement Co. v. Knapp*, 230 N.Y. 48, 129 N.E. 202, 207 (N.Y. 1920).

## I. BACKGROUND

The facts and procedural history giving rise to Thomason's claims against Lehrer are set forth in detail in this Court's August 21, 1998, opinion, *Thomason v. Lehrer*, 182 F.R.D. 121, 123, 132–33 (D.N.J.1998) (*"Thomason I "*), and, therefore, shall only be summarized below.

Thomason represented the plaintiff, Waterloov Gutter Protection Systems Co., Inc. ("Waterloov"), in the *Waterloov* action. *See Thomason I*, 182 F.R.D. at 123–24. In response to Waterloov's amended complaint, the defendants in the *Waterloov* action, through their attorney, Lehrer, filed an answer, affirmative defenses and counterclaims. *See id.* 182 F.R.D. at 124. The counterclaims not only asserted claims against Waterloov and its president, but also alleged claims against Thomason, his law partner, and his law firm. *See id.* Because of the counterclaims, Thomason was forced to withdraw from the representation of Waterloov. *See id.*

On or about March 4, 1998, prior to withdrawing as counsel in the *Waterloov* action, Thomason filed a complaint against Lehrer in the Superior Court of New Jersey, Monmouth County, Law Division. *See id.* The complaint asserted the following claims against Lehrer: a 42 U.S.C. § 1983, civil rights violation for abuse of process (Count I); two claims for negligent misrepresentation (Counts II and III); and a claim for tortious interference (Count I). *See Thomason I*, 182 F.R.D. at 124–26. Specifically, Thomason alleged that, by filing the counterclaims in this Court, Lehrer had violated Thomason's civil rights, negligently misrepresented that Thomason had "a financial interest in Waterloov or a related company[;]" and tortiously interfered with Thomason's "reasonable expectation of prospective work and fee income from acting as attorney [for Waterloov]." *See Thomason I*, 182 F.R.D. at 124–25; *see also* Second Amended Complaint (filed May 28, 1998), ¶¶ 21, 34, 45.[1]

1. Thomason filed the original state court complaint on or about March 4, 1998. *See Thomason I*, 182 F.R.D. at 123–25. On April 21, 1998, Thomason amended the state court complaint to add allegations addressing Lehrer's alleged misconduct in the interim, and to add an additional claim for negligent misrepresentation. *See id.*

After removal to this Court, on May 28, 1998, Thomason filed an amended complaint in this Court, deleting all references to 42 U.S.C. § 1983. *See id.* at 125–26. For the purposes of this opinion, the amended federal complaint shall be referred to as the "Second Amended Complaint."

On May 18, 1998, Lehrer removed the state court action to this Court, alleging that this Court had original federal question jurisdiction over the case pursuant to 28 U.S.C. § 1331, based on Thomason's § 1983 claim. *See Thomason I*, 182 F.R.D. at 125–26. Removal was unopposed. *See id.*

On May 26, 1998, "I ordered Thomason to show cause: why Count I of the [Second] Amended Complaint should not be dismissed for failure to state a claim upon which [relief] can be granted and why Counts II through IV should not be dismissed pursuant to 28 U.S.C. § 1367(c)(3)." *See id.* (citation omitted) (second alteration not added). "I [also] ordered Thomason to show cause: why sanctions should not be imposed against [him] pursuant to: (1) Rule 11 of the Federal Rules of Civil Procedure; (2) 28 U.S.C. § 1927; and (3) the Court's inherent powers." *See id.* (citation omitted).

On May 28, 1998, Thomason filed the Second Amended Complaint in this Court deleting all references to 42 U.S.C. § 1983 from Count I. *See id.* Accordingly, by letter, I amended the Order to Show Cause to require the parties to brief the additional question of why Count I of the Second Amended Complaint should not be dismissed for lack of subject matter jurisdiction. *See id.* (citation omitted).

On August 21, 1998, I held that the complaint as amended, which deleted all references to § 1983, was "minimally sufficient to invoke the Court's jurisdiction under 28 U.S.C. §§ 1331, 1343(a)."[2] *Thomason I*, 182 F.R.D. at 126. I "exercis[ed] subject matter jurisdiction over Count I of the Second Amended Complaint, and supplemental jurisdiction over Counts II through IV" pursuant to 28 U.S.C. § 1367(a). *Id.* at 127–28. Subsequently, "I conclude[d] that Count I of the Second Amended Complaint [did] not even begin to approach stating a claim upon which relief can be granted" because the filing of a pleading by a private attorney on behalf of a private entity could not reasonably be construed as state action. *Id.* 127–29. As a result, the claim for abuse of process allegedly resulting in a violation of Thomason's federally protected civil rights was dismissed with prejudice. *See id.* at 128–29.

In addition, I imposed sanctions against Thomason pursuant to Rule 11(b)(1)[3] of the Federal Rules of Civil Procedure because I found that "the only purpose to including [his] allegations as part of [a] separate action was to harass Lehrer." *Thomason I*, 182 F.R.D. at 130–31. I also imposed sanctions against Thomason pursuant to Rule 11(b)(2) because I concluded that he "could not reasonably believe or in good faith have thought that every factually baseless lawsuit necessarily gives rise to a section 1983 action." *Id.* at 131. As a consequence, I imposed the following sanctions:

> I will ... sanction Thomason pursuant to Rule 11 and impose upon him a fine of $2,000, $1,000 of which is to be paid directly to Lehrer and $1,000 to be deposited into the Court's Registry pursuant to Local Civil Rule 67.1, both of which shall be paid within thirty days of the date of this Opinion. Additionally, I will require Thomason to attend both a course on federal practice and procedure and a course on attorney professionalism and professional conduct within eighteen months of the date

**2.** Section 1331 provides:
> The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.

28 U.S.C. § 1331. Section 1343(a) provides, in pertinent part:
> The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person: (1) [t]o recover damages for injury to his person or property, or because of the deprivation of any right or privilege of a citizen of the United States....

28 U.S.C. § 1343(a)

**3.** Rule 11(b)(1–2) provides, in pertinent part:
> By presenting to the court ... a pleading, written motion or other paper, an attorney ... is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,
> (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
> (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law....

Fed.R.Civ.P. 11(b)(1–2).

of this Opinion. Thomason shall file an affidavit with the Court attesting to his attendance at and satisfactory completion of the required courses.

*Thomason I*, 182 F.R.D. at 132–33.

Furthermore, I ordered Thomason "to show cause why Counts II through IV of the Second Amended Complaint should not be dismissed pursuant to the so-called 'litigation privilege' which is firmly established under New Jersey law. *See Peterson v. Ballard*, 292 N.J.Super. 575, 581, 679 A.2d 657 (App. Div.1996), *certif. denied*, 147 N.J. 260, 686 A.2d 761 (1996)." *Thomason I*, 182 F.R.D. at 132–33. I further noted:

This privilege affords to attorneys, parties, and their representatives absolute immunity for statements made in the course of judicial or quasi-judicial proceedings. *See* [*Peterson*, 292 N.J.Super. at 581, 679 A.2d 657] (discussing *Erickson v. Marsh & McLennan Co., Inc.*, 117 N.J. 539, 569 A.2d 793 (1990), and *Hawkins v. Harris*, 141 N.J. 207, 661 A.2d 284 (1995)). Counts II through IV of the Second Amended Complaint, based on state law, appear to assert noting more than claims for relief predicated on statements made by Lehrer during the course of the [*Waterloov* action].

*Thomason I*, 182 F.R.D. at 132–33.

In compliance with the Order to Show Cause, on September 18, 1998, Thomason filed his brief opposing the dismissal of his state-law claims on the basis of the litigation privilege. *See* Plaintiff's Brief (submitted Sept. 18, 1998) ("Pl. Brief"). Specifically, Thomason contends: (1) that the Court should decline to exercise supplemental jurisdiction and remand the remaining state-law claims to state court; and (2) that the litigation privilege does not apply to Counts II–IV, citing *Baglini v. Lauletta*, 315 N.J.Super. 225, 227–28, 717 A.2d 449, 450–51 (N.J. Sup. Ct., Law Div., June 9, 1998). *See* Pl. Brief at 2, 5–7, 8–9.

In opposition to Thomason's contentions, Lehrer argues: (1) that the Court's jurisdiction is no longer in issue; (2) that the *Baglini* case is irrelevant because it applies only to claims for abuse of process, and that claim was dismissed by the Court on August 21,

1998; and (3) that application of the litigation privilege requires dismissal of Thomason's remaining state common-law tort claims. *See* Defendants' Brief in Opposition to Plaintiff's Brief Regarding Litigation Privilege (submitted Oct. 2, 1998) ("Defs.Brief") at 2–3, 5–7.

## II. THE LEGAL STANDARD GOVERNING DISMISSAL FOR FAILURE TO STATE A CLAIM

Thomason has been ordered to show cause why Counts II–IV of the Second Amended Complaint "should not be dismissed pursuant to the litigation privilege as recognized under New Jersey law[.]" Order of the Court (filed Aug. 21, 1998). The nature of this Court's inquiry is governed by Rule 12(b)(6) of the Federal Rules of Civil Procedure, dismissal for failure to state a claim upon which relief can be granted. *See Thomason I*, 182 F.R.D. at 127–28; *see also* Fed.R.Civ.P. 12(b)(6).

In considering whether to dismiss for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6), the court may dismiss a complaint only if it appears certain that the plaintiff cannot prove any set of facts in support of its claims which would entitle it to relief. *See, e.g., Ransom v. Marrazzo*, 848 F.2d 398, 401 (3d Cir.1988). While all well-pled allegations are accepted as true and all reasonable inferences are drawn in the plaintiff's favor, *see, e.g., Gomez v. Toledo*, 446 U.S. 635, 636, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980); *Schrob v. Catterson*, 948 F.2d 1402, 1405 (3d Cir.1991); *Markowitz v. Northeast Land Co.*, 906 F.2d 100, 103 (3d Cir.1990), the court may dismiss a complaint where, under any set of facts which could be shown to be consistent with a complaint, the plaintiff is not entitled to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Finally, "Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law." *Neitzke v. Williams*, 490 U.S. 319, 326–27, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).

## III. DISCUSSION

### A. Supplemental Jurisdiction

Although the scope of the Order to Show Cause was limited to the applicability of the

litigation privilege, Thomason contends that the Court should refuse to exercise supplemental jurisdiction over his remaining state-law claims and remand the case to the Superior Court of New Jersey. I decline Thomason's invitation to reconsider my decision to exercise supplemental jurisdiction.

In my August 21, 1998, Opinion, I discussed in detail the scope of this Court's subject matter jurisdiction and supplemental jurisdiction relative to Thomason's claims against Lehrer. See Thomason I, 182 F.R.D. at 126–28. I specifically found "that the Court may exercise subject matter jurisdiction over Count I of the Second Amended Complaint, and supplemental jurisdiction over Counts II through IV[,]" the state common-law tort claims. Thomason I, 182 F.R.D. at 127–28. Moreover, I pointed out: "Because the circumstances set forth in Counts II through IV of the Second Amended Complaint arose out of the conduct of counsel in a case already pending in this Court, I will exercise supplemental jurisdiction over Counts II through IV of the Second Amended Complaint pursuant to 28 U.S.C. § 1367(a)." Id. at 132–33. Having already decided to exercise supplemental jurisdiction over Thomason's remaining state-law claims, Thomason's argument to remand the case to the Superior Court of New Jersey for lack of jurisdiction is untimely, beyond the scope of the Order to Show Cause, and contrary to the doctrine of the law of the case. See Public Interest Research Group of New Jersey, Inc. v. Magnesium Elektron, Inc., 123 F.3d 111, 116–17 (3d Cir.1997).

## B. The Litigation Privilege Under New Jersey Law

New Jersey has recognized the litigation privilege as "the backbone to an effective and smoothly operating judicial system." Peterson v. Ballard, 292 N.J.Super. 575, 582, 679 A.2d 657 (App.Div.1996) (quoting Hawkins v. Harris, 141 N.J. 207, 222, 661 A.2d 284 (1995) (citing Silberg v. Anderson, 50 Cal.3d 205, 266 Cal.Rptr. 638, 786 P.2d 365, 370 (Cal.1990))). The litigation privilege is "firmly established in New Jersey case law." Peterson, 292 N.J.Super. at 581, 679 A.2d 657 (citing Hawkins, 141 N.J. at 215, 661 A.2d 284). The privilege protects, as absolutely immune from liability, statements by attorneys made in the course of judicial or quasi-judicial proceedings. See Peterson, 292 N.J.Super. at 581, 679 A.2d 657 (citing Erickson v. Marsh & McLennan Co., Inc., 117 N.J. 539, 563, 569 A.2d 793 (1990)).

Originally applied in defamation cases, see Peterson, 292 N.J.Super. at 581–82, 679 A.2d 657, the litigation privilege has been expanded to encompass both common-law and statutory causes of action for tortious conduct. See Peterson, 292 N.J.Super. 575, 679 A.2d 657 (applying litigation privilege to bar plaintiff's claim under the New Jersey Law Against Discrimination, N.J. Stat. Ann. 10:5–12d, and claim for intentional infliction of emotional distress); see also Rainier's Dairies v. Raritan Valley Farms, 19 N.J. 552, 117 A.2d 889 (1955) (applying litigation to bar claim for malicious interference with a business); Ruberton v. Gabage, 280 N.J.Super. 125, 133–34, 654 A.2d 1002 (App.Div.1995) (applying privilege to claim for malicious interference); Middlesex Concrete Products & Excavating Corp. v. Carteret Industries Ass'n, 68 N.J.Super. 85, 172 A.2d 22 (N.J.Super.A.D.1961) (applying litigation privilege to bar tortious interference claim); accord Lapat v. Serber, Civ. Action No. 95–1021, 1995 WL 481493, at *1 (E.D.Pa. Aug.1, 1995).

The New Jersey Supreme Court has determined that the policy underlying application of the litigation privilege to defamation actions applies with equal force to other claims of tortious conduct based upon statements made during judicial proceedings. See Peterson, 292 N.J.Super. at 582, 679 A.2d 657 (citing Rainier's Dairies, 19 N.J. at 564, 117 A.2d 889; Ruberton, 280 N.J.Super. at 133–34, 654 A.2d 1002). That Court has written:

> If the policy, which in defamation actions affords an absolute privilege or immunity to statements made in judicial or quasi-judicial proceedings is really to mean anything then we must not permit its circumvention by affording an almost equally unrestricted action under a different label.

Rainier's Dairies, 19 N.J. at 564, 117 A.2d 889; accord Ruberton, 280 N.J.Super. at 133–34, 654 A.2d 1002.

Consistent with all absolute privileges, the litigation privilege protects "the bad as well as the good." *Peterson*, 292 N.J.Super. at 590, 679 A.2d 657 (citing *Hawkins*, 141 N.J. at 213, 661 A.2d 284). "[T]he supervening public policy that persons [engaged in litigation] ... be allowed to speak and write freely without the restraint or fear of an ensuing action[,]" warrants the protection of the occasional tortious statement. *Peterson*, 292 N.J.Super. at 590, 679 A.2d 657 (citing *Hawkins*, 141 N.J. at 214, 661 A.2d 284).

■ The protections of the litigation privilege apply to any communication satisfying the following four requirements: the communication must have been "(1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action." *Hawkins*, 141 N.J. at 207, 661 A.2d 284 (citing *Silberg*, 266 Cal. Rptr. 638, 786 P.2d at 369). "Whether a defendant is entitled to the privilege is a question of law." *Hawkins*, 141 N.J. at 207, 661 A.2d 284 (citing *Devlin v. Greiner*, 147 N.J.Super. 446, 460, 371 A.2d 380 (Law Div. 1977)); *see also Peterson*, 292 N.J.Super. at 589, 679 A.2d 657.

■ The litigation privilege, however, is not limitless. A party injured by statements made during judicial proceedings can seek remedies, other than a civil action for tortious conduct. *See Hawkins*, 141 N.J. at 215, 661 A.2d 284. "Remedies for perjury, slander and the like committed during judicial proceedings are left to the discipline of the courts, the bar association, and the state." *Id.* (quoting *Wright v. Yurko*, 446 So.2d 1162, 1164 (Fla.Dist.Ct.App.1984)). In addition, the litigation privilege does not apply to tort claims for malicious prosecution. *See Ruberton*, 280 N.J.Super. at 133, n. 1, 654 A.2d 1002 (citing *Rainier's Dairies*, 19 N.J. at 564, 117 A.2d 889); *cf. Baglini v. Lauletta*, 315 N.J.Super. 225, 717 A.2d 449, 451–452 (declining to extend litigation privilege to claim

for abuse of process); *see also* Section III. B.2 *infra.*

### 1. Application of the Litigation Privilege to Lehrer's Counterclaims

■ Thomason does not dispute that Lehrer's statements in the counterclaims were made in a judicial proceeding, by an attorney, in connection with the legal action. *See* Pl. Brief at 3; *see also Hawkins*, 141 N.J. at 216, 661 A.2d 284. Thomason, however, does dispute that Lehrer made the statements "to achieve the objects of the litigation...." *See Hawkins*, 141 N.J. at 216, 661 A.2d 284; *see also* Pl. Brief at 3–4. Thomason contends that Lehrer has failed to allege facts sufficient to establish this element of the litigation privilege. *See* Pl. Brief at 4. This contention is without merit.

The New Jersey Supreme Court has determined that the presentation of facts and opinions, either in filed documents or in the courtroom itself, is an integral part of a pending litigation, and the judicial process as a whole. *See Hawkins*, 141 N.J. at 218, 661 A.2d 284 (citing *Adams v. Peck*, 288 Md. 1, 415 A.2d 292, 295 (Md.1980)). New Jersey courts have found defamatory, even threatening statements by attorneys, and others only tangentially associated with the litigation, to have litigation as their objective. *See Hawkins*, 141 N.J. at 213, 221, 661 A.2d 284 (extending litigation privilege to insurance investigators whose statements portrayed the "plaintiff as an unfaithful spouse, insurance cheat, and a suborner of perjury...."); *Ruberton*, 280 N.J.Super. at 129, 134, 654 A.2d 1002 (finding attorney's threat to bring criminal charges if plaintiff did not settle protected by litigation privilege). "A statement is privileged only if it has some relation to the [legal] proceeding." *Hawkins*, 141 N.J. at 222, 661 A.2d 284.

Thomason's tort claims focus on Lehrer's statements contained in the counterclaims filed in this Court. Clearly, the allegations of a counterclaim "have some relation to the proceeding." They form an essential component of the litigation, namely, a claim. There can be no more integral part of litigation than a claim set forth in a pleading. Without it there can be no litigation. Surely, the allegations of a counterclaim, which form the foundation of a law suit, have litigation as their objective. Indeed, Rule 8(a) of the

Federal Rules of Civil Procedure clearly describes what must be contained in "Claims for Relief."[4]

Accordingly, I find that the counterclaims asserted by Lehrer against Thomason qualify for protection under the litigation privilege as defined by New Jersey law.

### 2. The Baglini Decision Does Not Apply to Thomason's Claims for Negligent Misrepresentation or Tortious Interference

Thomason next contends that the decision of *Baglini v. Lauletta*, 315 N.J.Super. 225, 227–28, 717 A.2d 449, 450–51, supports the proposition that the litigation privilege does not bar his claims for negligent misrepresentation and tortious interference. *See* Pl. Brief at 5–7; *see also* Second Amended Complaint (filed May 28, 1998) (Counts II–IV). Thomason's contention inappropriately expands the holding of the *Baglini* decision beyond its stated scope, specifically, that the litigation privilege does not apply to claims for abuse of process. Because Thomason's claim for abuse of process against Lehrer has already been dismissed by this Court, the *Baglini* decision is inapplicable. *See Thomason I*, 182 F.R.D. at 128–29.

In *Baglini*, the New Jersey Superior Court, Gloucester County, Law Division, "conclude[d] that the litigation privilege is not properly applied to an abuse of process action." *Baglini*, 315 N.J.Super. 225, 229–30, 717 A.2d 449, 450–52. The court stated that "an abuse of process claim is inherently inimical to a litigation privilege and taken to its

logical extreme, could emasculate the tort entirely." *Id.* at 238–39, 717 A.2d. at 455–56. In reaching this decision, the Superior Court distinguished other New Jersey cases applying the absolute protections of the litigation privilege. *See Baglini*, 315 N.J.Super. 225, 232–35, 717 A.2d 449, 453–54 (distinguishing *Ruberton*, 280 N.J.Super. 125, 654 A.2d 1002, stating that "it must be emphasized that the *Ruberton* court held that [in the case before it,] a cause of action for abuse of process did not exist....").

█ The *Baglini* court also distinguished *Ruberton* on the ground that the allegedly tortious statement in *Ruberton* was uttered in furtherance of "a legitimate underlying suit[,]" whereas the statements at issue in *Baglini* were uttered in the context of a nuisance suit. *See Baglini*, 315 N.J.Super. 225, 238–39, 717 A.2d 449, 455–56. This distinction between meritorious and baseless claims runs·afoul of the public policy supporting the litigation privilege:[5]

> [T]he trouble with privileges[, including the litigation privilege,] is that they protect the bad as well as the good.... [W]e are willing to accept such a privilege because of the supervening public policy that persons ... be allowed to speak and write freely without restraint or fear of an ensuing action.

*Peterson*, 292 N.J.Super. at 590, 679 A.2d 657 (citing *Hawkins*, 141 N.J. at 213–14, 661 A.2d 284) (internal citations omitted).

In arguing that the *Baglini* decision should be applied in this case to permit Thomason to

---

4. Rule 8(a) of the Federal Rules of Civil Procedure provides:

> A pleading which sets forth a claim for relief, whether an original claim, counterclaim, cross-claim, or third-party claim, shall contain (1) a short plain statement of the grounds upon which the court's jurisdiction depends, unless the court already has jurisdiction and the claim needs no new grounds of jurisdiction to support it, (2) a short and plaint statement of the claim showing that the pleader is entitled to relief, and (3) a demand for judgment for the relief the pleader seeks. Relief in the alternative or of several different types may be demanded.
> Fed.R.Civ.P. 8(a).

5. For this reason, I respectfully disagree with the reasoning of the *Baglini* court. The *Baglini*

court correctly stated that the New Jersey Supreme Court "has never addressed the issue of the applicability of the litigation privilege to an abuse of process action...." 315 N.J.Super. 225, 717 A.2d 449, 454. When state law provides the rule of decision, a federal court must predict how the state's highest court would decide the issue. *Pittston Co. v. Allianz Ins. Co.*, 124 F.3d 508, 516–17 (3d Cir.1997). In making this prediction, a federal court should certainly give due consideration to decisions by state trial courts, however, a federal court is not bound by them. *See Chemical Leaman Tank Lines, Inc. v. Aetna Casualty and Surety Co.*, 978 F.Supp. 589, 601 (D.N.J.1997) (citing *Clark v. Modern Group Ltd.*, 9 F.3d 321, 327 (3d Cir.1993)). Since *Baglini*, by its terms, is limited to claims for abuse of process, it is clearly inapposite to Thomason's remaining state law claims.

prosecute Counts II–IV of the Second Amended Complaint, Thomason ignores a critical distinction between this case and *Baglini*, specifically, that Counts II–IV do not allege a claim for abuse of process. Count I of the Second Amended Complaint alleged a cause of action for abuse of process resulting in a violation of civil rights secured by the law of the United States. *See* Second Amended Complaint (filed May 28, 1998) (Count I). The Court dismissed Thomason's abuse of process claim on August 21, 1998, ordering "that Count I of the Second Amended Complaint be, and hereby is, DISMISSED WITH PREJUDICE pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure...." *See* Order of the Court (filed Aug. 21, 1998).

■ Counts II–IV allege claims for negligent misrepresentation and tortious interference. These claims are of "the type of tortious conduct to which courts ... have applied the [litigation] privilege." *Peterson*, 292 N.J.Super. at 582–83, 679 A.2d 657 (digesting cases where courts have applied the litigation privilege to bar tort claims, including: defamation, intentional infliction of emotional distress, and malicious interference with a business); *see also Rainier's Dairies*, 19 N.J. 552, 117 A.2d 889; *Ruberton*, 280 N.J.Super. 125, 654 A.2d 1002; *Middlesex Concrete Products*, 68 N.J.Super. 85, 172 A.2d 22; *Lapat*, 1995 WL 481493, at *1. Clearly, if the litigation privilege applies to torts involving intentional conduct, such as the intentional infliction of emotional distress, *see Peterson*, 292 N.J.Super. at 583, 679 A.2d 657, then the privilege surely applies to the unintentional tort of negligent misrepresentation. Thus, because the holding of *Baglini* is limited by its terms to claims for abuse of process, Thomason's reliance upon that decision is simply misplaced. Consequently, the *Baglini* decision cannot save Counts II–IV from dismissal based upon the litigation privilege.

By arguing for the extension of the *Baglini* decision to bar application of the litigation privilege to his remaining tort claims, Thomason argues in effect for "emasculation" of the litigation privilege. *Baglini*, 315 N.J.Super. 225, 238–39, 717 A.2d 449, 455–56. The *Baglini* court was concerned that the litigation privilege could swallow the tort of abuse of process. *See Baglini*, 315 N.J.Super. 225, 238–39, 717 A.2d 449, 455–56. The logical result of Thomason's argument is that it would preclude application of the litigation privilege to any tort claim where there is an allegation that the underlying litigation is baseless. As noted above, this is clearly contrary to the public policies supporting the privilege. *See Peterson*, 292 N.J.Super. at 590, 679 A.2d 657 (citing *Hawkins*, 141 N.J. at 213–14, 661 A.2d 284).

Accordingly, Counts II–IV of the Second Amended Complaint will be dismissed because New Jersey's litigation privilege absolutely immunizes Lehrer's statements in the counterclaims from liability for negligent misrepresentation and tortious interference.

*C. A Federal Court is the Exclusive Forum to Seek Redress for Litigation Abuses Committed in a Federal Suit*

As I made clear in *Thomason I*, this Court is deeply troubled by Thomason's conduct. *See Thomason I*, 182 F.R.D. at 129–33. Thomason steadfastly and vehemently defends his belief that it is appropriate for an attorney, aggrieved by the tactics of an adversary in a federal court action, to file a state court complaint against his attorney-adversary in an effort to obtain redress for the alleged abuses. *See* Pl. Brief at 3–13. To hail an attorney-adversary into state court to answer for conduct arising out of a federal court proceeding subverts a District Court's ability to execute its duty "to supervise the conduct of the members of its bar." *Cf. Richardson v. Hamilton Int'l Corp.*, 469 F.2d 1382, 1385 (3d Cir.1972). Furthermore, it results in needless "satellite litigation" and burdens state courts with litigation that properly belongs in federal courts.

■ District Courts are vested with inherent powers, enabling them to fashion appropriate remedies to uphold the integrity of federal judicial proceedings and oversee the conduct of attorneys who practice before them. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 43, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991); *see also Richardson*, 469 F.2d at 1385. District "[C]ourts under their inherent

powers have developed a wide range of tools to promote efficiency in their courtrooms and to achieve justice in their results. . . ." *In re Tutu Wells Contamination Lit.*, 120 F.3d 368, 383 (3d Cir.1997). A partial list of these tools includes: the power to "control admission to its bar, discipline attorneys, punish for contempt, vacate its own judgment upon a finding of fraud, bar a criminal defendant from a courtroom for disruptive behavior, dismiss a suit on forum non conveniens grounds or failure to prosecute, and assess attorney's fees." *In re Tutu Wells*, 120 F.3d at 383 (citing *Chambers*, 501 U.S. at 43–46, 111 S.Ct. 2123). This list is not exhaustive because "[t]he permissible scope of inherent powers is somewhat unclear. . . ." *In re Tutu Wells*, 120 F.3d at 383. The Third Circuit has "observed that the notion of inherent power has been described as nebulous, and its bounds shadowy." *In re Tutu Wells*, 120 F.3d at 383 (quoting *Eash v. Riggins Trucking, Inc.*, 757 F.2d 557, 561 (3d Cir.1985)) (internal quotations omitted).

In *Chambers v. NASCO, Inc.*, the United States Supreme Court shed considerable light upon this murky area of the law. The Court wrote:

It has long been understood that certain implied powers must necessarily result to our Courts of justice from the nature of their institution, powers which cannot be dispensed with in a Court, because they are necessary to the exercise of all others. For this reason, Courts of justice are universally acknowledged to be vested, by their very creation with power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates. These powers are governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases. . . . Prior cases have outlined the scope of the inherent power of the federal courts. For example, the [United States Supreme] Court has held that a federal court has the power to control admission to its bar and to discipline attorneys who appear before it. While this power ought to be exercised with great caution, it is nevertheless incidental to all Courts. . . .

Because of their very potency, inherent powers must be exercised with restraint and discretion. A primary concern of that discretion is the ability to fashion an appropriate sanction for conduct which abuses the judicial process.

*Chambers*, 501 U.S. at 43–45, 111 S.Ct. 2123; *see also Roadway Exp., Inc. v. Piper*, 447 U.S. 752, 765–67, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980).

█ A District Court has the authority and, indeed, the duty to examine allegations that an attorney appearing before the court "has violated his moral and ethical responsibility[,]" and to fashion an appropriate remedy, if warranted. *Richardson*, 469 F.2d at 1385; *see also* Fed.R.Civ.P. 11(c) (providing that "the court . . . may impose an appropriate sanction . . ." if warranted); 28 U.S.C. § 1927 (providing that the court can assess reasonable attorneys' fees against an attorney who "multiplies the proceedings in any case unreasonably and vexatiously . . ."); *accord Fellheimer, Eichen & Braverman, P.C. v. Charter Technologies, Inc.*, 57 F.3d 1215, 1224 (3d Cir.1995). Broad discretion is given to District Courts "to control the conduct of those who appear before them[,]" with "an arsenal of sanctions they can impose for unethical behavior." *Erickson v. Newmar Corp.*, 87 F.3d 298, 303 (9th Cir.1996) (citing *Chambers*, 501 U.S. at 43, 111 S.Ct. 2123).

The central component of this broad grant of authority embodied in the inherent powers of federal courts is the principle that a District Court is the appropriate forum in which to seek redress for alleged abuses of its processes. *See Chambers*, 501 U.S. at 44, 111 S.Ct. 2123 ("A primary aspect of [the inherent powers] is the ability to fashion an appropriate sanction for conduct which abuses the judicial process."); *see also Hull v. Celanese Corp.*, 513 F.2d 568, 570 (2d Cir. 1975) (stating that "[t]he district court bears the responsibility for the supervision of the members of its bar").

This principle, that the court, whose process allegedly has been abused, is the appropriate forum in which to seek redress, is further supported by the limits that the New Jersey courts have placed on the litigation

privilege. A court is given broad latitude to address the allegedly tortious conduct of attorneys appearing before it. *See Hawkins,* 141 N.J. at 215, 661 A.2d 284 (stating that remedies for unacceptable conduct during judicial proceedings are "left to the discipline of the courts, the bar association, and the state") (citation omitted); *see also Peterson,* 292 N.J.Super. at 588, 679 A.2d 657 (stating that "the potential harm which may result from [the] absolute privilege is mitigated by the comprehensive control of the trial judge, and the rules of professional conduct which govern attorney conduct") (citation omitted).

In *Thomason I,* I specifically described the remedies available to Thomason in this Court to obtain redress for Lehrer's alleged misconduct. I wrote:

"Thomason ... had ample opportunity to challenge in this Court the factual allegations contained in ... [the] counterclaims.... Thomason could immediately have answered ... [the] counterclaims and moved for judgment on the pleadings, or Thomason could also have immediately moved to dismiss ... [the] counterclaims on the ground that his actions on behalf of a client could not rise to the level of unfair competition.... [I]f the counterclaims were as frivolous and lacking in factual basis as Thomason's Second Amended Complaint alleges they are, Thomason easily could himself have moved for sanctions under Rule 11.... There was clearly no purpose to Thomason's institution in state court, and continuation in this Court, of a separate ... action against Lehrer, other than ... to attempt to do to Lehrer what Lehrer had done to him, prevent him from appearing in the [*Waterloov*] action]."

*Thomason I,* 182 F.R.D. at 129–31. Thomason persists in litigating his state-law claims against Lehrer, going so far as to argue that this Court should remand Counts II–IV to the Superior Court of New Jersey. *See* Pl. Brief at 2. This attitude confirms this Court's earlier conclusion that "the only purpose ... [for] ·the separate action was to harass Lehrer." *Thomason I,* 182 F.R.D. at 130–31. It is ironic that Thomason, who contends that Lehrer has engaged in inap-

propriate "litigation abuse," has no compunction about continuing to do so himself.

By filing a state court action against Lehrer, rather than seeking relief in this Court from Lehrer's allegedly tortious conduct, Thomason intentionally attempted to frustrate this Court's ability "to manage [its] own affairs so as to achieve the orderly and expeditious disposition of cases," *Chambers,* 501 U.S. at 43, 111 S.Ct. 2123 (quoting *Link v. Wabash R. Co.,* 370 U.S. 626, 630–31, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962)), and prevent this Court from discharging its duty to fashion an appropriate remedy for litigation abuses allegedly committed by a member of its bar. *See id.* at 44–45, 111 S.Ct. 2123.

#### 1. *Thomason's Action Violated Well–Established Principles of Comity and Federalism*

Wounded by Lehrer's counterclaims, in an effort to avoid the judgment of this Court, Thomason unnecessarily burdened the Superior Court of New Jersey with his personal vendetta. Such an action, assuming that the case had not or could not have been removed to this Court, would have required the state court to inquire into the propriety of pleadings filed in a case pending before a federal court. Such an inquiry by a state court would upset the delicate balance struck by the venerable policies of Comity, and what Justice Black described as "Our Federalism." *See generally Younger v. Harris,* 401 U.S. 37, 44–45, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). Although fundamental principles of Comity instruct federal and state courts to avoid infringing upon each other's prerogatives, Thomason deliberately sought to subvert these core principles of Federalism, solely in an effort to embarrass and harass Lehrer beyond the reach of this Court.

The duty of this Court to uphold the integrity of its proceedings and discipline the members of its bar, clearly, outweighs Thomason's purely personal objectives in asserting baseless claims against Lehrer in state court. Accordingly, in the exercise of this Court's inherent powers, I hold that Thomason was required to seek relief from Lehrer's allegedly tortious conduct exclusively in this Court. An attorney who alleges claims of "litigation abuse" by another attorney-adver-

sary, arising out of conduct which occurred in a pending proceeding in this Court, must seek redress in this Court. To hold otherwise would unreasonably permit such litigious attorneys to divest this Court of its inherent power to discipline attorneys who practice before it and to fashion appropriate remedies for abuse of its process. *See Chambers*, 501 U.S. at 44–45, 111 S.Ct. 2123.

2. *Thomason's Prosecution of a State Court Action Encourages Forum Shopping, Judge Shopping, and Unnecessarily Multiplies Litigation*

A rule which would permit attorneys such as Thomason, to harass their federal-court adversaries in a collateral state court proceeding, would encourage forum shopping, judge shopping, and the multiplication of litigation. Rather than seek sanctions against Lehrer, or pursue a remedy available to him in this Court, Thomason sought to escape the scrutiny of this Court by suing Lehrer in state court. His in-artfully pled state-complaint, however, allowed Lehrer to remove the state-court action to this Court. In response to removal, Thomason attempted to divest this Court of jurisdiction by the transparent subterfuge of amending his complaint to delete all references to federal law. As discussed in detail in *Thomason I*, this maneuver proved fruitless. *See Thomason I*, 182 F.R.D. at 126–29. Now, again, in an effort to avoid the judgment of this Court, Thomason contends that the Court should decline to exercise supplemental jurisdiction. *See* Pl. Brief at 2.

Thomason's repeated machinations to prevent this Court from reviewing Lehrer's allegedly tortious conduct, underscore the appropriateness of a rule requiring Thomason to bring these claims before this Court, and no other. Had Thomason filed a complaint in state court which was not removable to this Court, Lehrer would have been forced to defend in state court at great expense. More importantly, a state court judge would have been diverted from other matters to deal with Thomason's purely personal vendetta. Adopting a rule which prohibits cases such as this from being filed in state court, conserves state judicial resources, and avoids the evils of judge shopping and forum shopping. Therefore, it is perfectly consistent with principles of Comity and the conservation of judicial resources to require litigants, such as Thomason, to seek relief solely in the court where the alleged transgression occurred.

### 3. *Professionalism*

Whatever personal demons drove Thomason to pursue this cause of action against Lehrer is a question that need not be addressed by this Court. What is important, however, is what can be learned from this unfortunate exercise in acrimony and vilification. Attorneys perform a service to their clients and the Courts when they represent their clients' interests with zeal and diligence, consistent with the Rules of Professional Conduct. That is, after all, the true role of the advocate. When attorneys discard their objectivity and become partisans, rather than advocates, they begin a journey down the slippery slope which Thomason has taken. When attorneys allow their personal feelings, rather than their professional judgment, to influence their conduct, the result is not pretty. That, unfortunately, is what has happened in this case. A lawyer has lost his temper, and in doing so, has lost his way. It is for this reason that trial lawyers must show respect and courtesy for their adversaries. Because many lawyers seem to have forgotten this basic principle, Codes of Professionalism have recently been adopted by various bar associations. *See, e.g., Guidelines for Litigation Conduct*, August, 1998, Section of Litigation, American Bar Association; *Principles of Professionalism for Lawyers and Judges*, New Jersey Commission on Professionalism in the Law.

Such Codes reflect the time-honored wisdom that civility and courtesy are not inconsistent with vigorous advocacy. Had this principle been observed in this case, I cannot escape the conclusion that it would never have been filed.

## IV. CONCLUSION

For the reasons set forth above, Counts II–IV of the Second Amended Complaint will be dismissed with prejudice. The Court will enter an appropriate order.

## ORDER

This matter having come before the Court on the Order to Show Cause Why Counts II–IV of the Amended Complaint Should Not Be Dismissed Pursuant to the Litigation Privilege as Recognized under New Jersey Law, Plaintiff, Charles L. Thomason, Esq., appearing *pro se,* and Norman E. Lehrer, Esq. of Norman E. Lehrer, P.C. appearing on behalf of Defendants, Norman E. Lehrer, P.C. and Norman E. Lehrer, Esq.; and

The Court having considered the submissions of the parties, for the reasons set forth in the OPINION filed concurrently with this ORDER;

IT IS, on this 27th day of October, 1998, hereby ORDERED that Counts II–IV of the Amended Complaint are DISMISSED with prejudice.

